**Freeman TROUT, Plaintiff-Appellant,**

v.

**Margaret HECKLER, Secretary of Health and Human Services, Defendant-Appellee.**

No. 83–5686.

United States Court of Appeals, Sixth Circuit.

Argued April 6, 1984.

Decided May 21, 1984.

Lenny L. Croce (argued), Rural Legal Services of TN., Inc., Oak Ridge, Tenn., for plaintiff-appellant.

John W. Gill, Jr., U.S. Atty., J. Edgar Schmutzer, Asst. U.S. Atty. (argued), Knoxville, Tenn., for defendant-appellee.

Before EDWARDS and KENNEDY, Circuit Judges, and WEICK, Senior Circuit Judge.

PER CURIAM.

This social security disability claimant was found by the Administrative Law Judge to have an antisocial personality disorder, a history of depression "controlled," status post surgery for rectal prolapse,[1] a history of ulcers and severe alcoholism. He apparently did not take into consideration appellant's 70 IQ. The ALJ concluded that Trout's combination of impairments is not sufficiently severe to prevent him from engaging in substantial gainful employment and the Appeals Council and the District Judge affirmed. We now reverse and remand for benefits.

Our examination of this record indicates to the panel majority that, excluding alcoholism from the combination of disabilities on which we rely for this judgment and including Trout's 70 IQ, his combination of disabilities is such as to prevent him from being able to perform substantial gainful employment. We do not ignore the seriousness of Trout's alcoholism and its impact on this record. We simply find it impossible to speculate as to whether his alcoholism is or is not subject to voluntary control by claimant since, in fact, the record supplies no guidance on this score. The combination of factual evidence found by the ALJ plus the undisputed fact that plaintiff has a 70 IQ renders him disabled from substantial gainful employment within the meaning of the Social Security Act. *Allen v. Califano*, 613 F.2d 139 (6th Cir. 1980).

We remand for benefits.

---

**1.** Rectal prolapse, our panel was informed, involved the surgical insertion of a mesh to prevent his lower bowel from being extended from his anus. It is undisputed that this device prevents his bending or stooping.

CORNELIA G. KENNEDY, Circuit Judge, dissenting.

I find substantial evidence in the record to support the administrative decision and would affirm the District Court.

Trout's chronic alcoholism is the most significant of his conditions. Mr. Trout is now 48, and testified that he has abused alcohol for about eighteen years. He has spent much of this time since 1971 in the state penitentiary for a series of alcohol-related crimes such as drunk driving and burglary to support his drinking. While in prison he received psychological services and was treated with Elavil. He has also been treated at various times with Ativan, Cobalasine, Librium, and Valium. At his hearing he testified he had prescriptions for Antabuse, Tranxene, and Valium, but stated that he was not taking the medications because he cannot afford to buy them.

Trout was married in early September 1981, just after his most recent release from prison. He was then hospitalized for detoxification and treatment of impending delerium tremens (DT's) on September 25, 1981. The DT's did not materialize. He asked to be discharged on September 28, 1981, saying that he felt better. He was discharged on Ativan and was urged to join Alcoholics Anonymous and to present himself for treatment at a mental health center.

Trout was examined in December 1981 by Dr. Charles Dowdy at the request of the Disability Determinations Section. Dr. Dowdy stated: "As far as I could learn, [Trout] has made no genuine effort to control his drinking."

Sometime after January 12, 1982, Trout sought counseling for his drinking problem from Dr. Lance Laurence, a clinical psychologist. Trout had earlier gone to Dr. Laurence in September 1981 just before his hospitalization, but failed to appear later for follow-up appointments with a drug and alcohol coordinator and a medical doctor.[1]

Trout was hospitalized again from February 24, 1982 to April 15, 1982. At that time he was taking ten milligrams per day of Valium, and his treatment included gradual withdrawal from the drug. According to the treating physician, Dr. Alfred Bennett, Trout resisted the treatment. Dr. Bennett further wrote:

> He was unwilling to stay until his regular discharge date. He had been requesting a regular discharge since entering his group therapy alleging that his alcohol problem is under control. He does not like being confined since he just got out of prison. * * * The subject refused to stay and was given an irregular discharge. He was discharged on a regular diet, ambulatory, competent, able to resume his prehospital employment status, on no medications.

Dr. Laurence, Mr. Trout's counselor, stated in July 1982 that though Trout's problems were of a long-standing nature requiring years of treatment, the situation was at that time somewhat better than it had been in the past.

Dr. Riley Senter, who examined Trout in November 1982 at the request of the Disability Determinations Section, found:

> [H]is present education [through the eighth grade], IQ [70] and continued abuse of alcohol would make him unfit for any regular job, sedentary or involving moderate to heavy amounts of labor. I strongly feel, therefore, that he needs extensive rehabilitation from alcohol abuse before employment could be attempted. I, therefore, feel that he is totally disabled from any and all occupations....

None of the physicians who have examined Trout have found any evidence of end organ damage as a result of his drinking.

According to Trout's testimony, his drinking is cyclic. He will remain sober for two or three weeks, and then drink heavily for five or six days. He testified that in the past he has stayed drunk for periods of up to three months. He stated that he is

---

1. Trout and his wife have also consulted with    Dr. Laurence for family counseling.

better when he is taking medication. He testified that he continues to attend counseling sessions.

It is clear that Mr. Trout has a serious drinking problem, which at this time precludes him from holding a job. Alcoholism, either alone or combined with other causes, can constitute a disability if it prevents a claimant from engaging in substantial gainful activity. *Ferguson v. Schweiker,* 641 F.2d 243 (5th Cir.1981). However, 20 C.F.R. § 404.1530(a) provides that in order to receive benefits, a claimant must follow treatment prescribed by his physician if the treatment can restore the ability to work. The ALJ found that there is "no evidence of a serious effort on [Trout's] part to control his alcoholism and to comply with prescribed treatment."

Trout also bases his claim of disablement on his rectal prolapse, anti-social personality, and borderline retardation.

Trout had surgery for rectal prolapse in 1979. The medical records show that his postoperative course was uneventful, and that he was having normal stools without prolapse by the time he left the hospital AWOL. Dr. Senter's examination in November of 1982 found "absolutely no recurrence of [Trout's] rectal prolapse and good rectal support and healing." Trout testified that he cannot lift more than ten pounds or sit for more than 35 to 40 minutes due to his rectal condition.

With respect to Trout's anti-social personality behavior, the physicians and psychologists who have examined Trout have found him to have a sociopathic personality and anxiety neurosis, but none has diagnosed a psychotic disorder. The record shows that Trout has normal cognitive perception and is capable of understanding instructions and carrying out tasks under his own direction.

Dr. Dowdy administered a full scale IQ test in December 1981 which measured Trout's IQ at 70. Dr. Dowdy's evaluation was that Trout has "borderline mental retardation." An IQ of 69 in some cases

meets a listed impairment if accompanied by another mental or physical impairment.[2] Mr. Trout, however, has been gainfully employed in the past, and this undercuts his claim that he is disabled by virtue of his IQ.

Accordingly, I would affirm the District Court.

---

**2.** 20 C.F.R. Part 404, Subpart P, Appendix 1,     12.05(C).