Ivan **DUNCAN**, Plaintiff-Appellant,

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES,** Defendant-Appellee.

No. 85–5757.

United States Court of Appeals, Sixth Circuit.

Submitted Aug. 5, 1986.

Decided Sept. 23, 1986.

consciousness of guilt." The defendant does not renew this argument on appeal.

John W. Gill, U.S. Atty., J. Michael Haynes, Asst. U.S. Atty., Knoxville, Tenn., for defendant-appellee.

Dorothy B. Stulberg, Mostoller and Stulberg, Oak Ridge, Tenn., for plaintiff-appellant.

Before KEITH and MERRITT, Circuit Judges, and CONTIE, Senior Circuit Judge.

CONTIE, Senior Circuit Judge.

Ivan Duncan appeals from the judgment of the district court which denied his motion for summary judgment, affirmed the determination by the Secretary of Health and Human Services (Secretary) that he is not entitled to disability insurance benefits, and dismissed his action brought under 42 U.S.C. § 405(g). Because the record contains substantial evidence to support the findings of the administrative law judge (ALJ), we affirm.

## I.

Duncan filed an application for disability insurance benefits on November 2, 1983, alleging that he became disabled in October, 1978 due to "back, neck, and head injury."[1] His application was denied initially and upon reconsideration. Duncan then requested a hearing to review the determination of his claim. His request was granted and on May 5, 1984, a hearing was held before an ALJ.

Duncan appeared at the hearing without counsel, although he acknowledged that he had been notified that he could have brought an attorney with him. Duncan was 55 years old at the time of the hearing, having been born on June 28, 1929. He is married, has a twelfth-grade education, and has past work experience as a coal mine worker and heavy equipment operator. Duncan last worked in October, 1978, when he was injured while working in a coal mine. Duncan had suffered a previous injury on May 28, 1978, after which he returned to work. Then, in October, a large rock landed on the left side of his head and shoulders.

Duncan testified at the hearing that his physicians were treating him for a degenerative disc and arthritis in his neck and back and that they told him not to do strenuous work. He also stated that he was unable to do anything except watch television and read books and was unable to walk very well. Duncan further stated that he had a hearing problem and had surgery to replace his eardrum.

Duncan's wife also testified at the hearing. She stated that in her opinion, Duncan was disabled. She also commented on Duncan's difficulty with walking and described him as being in constant pain.

The following evidence was included in the medical record. Progress notes compiled by Duncan's treating physician, Dr. George Stevens, indicate that Duncan began to experience pain in his right shoulder and neck due to the May 28, 1978, job-related injury. Dr. Stevens examined Duncan on June 9, 1978, and noted that Duncan claimed to experience pain with all neck motion, which was limited to fifty percent of the normal range of motion. Dr. Stevens' impression at that time was "spondylosis C5 to C7 with acute strain of the neck and shoulder." Dr. Stevens saw Duncan again on June 26, 1978. Duncan related that he had returned to work because he felt better, but after several days of work

---

1. Duncan filed a previous application on May 5, 1981, alleging disability as of October, 1978 due to back, liver and neck injuries. That application was denied initially and upon reconsideration. Duncan did not seek an administrative appeal, thereby allowing the Secretary's denial of benefits to become final, and did not appeal to a district court under 42 U.S.C. § 405(g). Consequently, the denial of Duncan's initial application is final and binding and is not at issue in the present case. *See Wilson v. Califano*, 580 F.2d 208, 211 (6th Cir.1978).

in the coal mines the pain returned. Dr. Stevens advised Duncan to consider a different job.

Dr. Stevens next saw Duncan on June 25, 1979, to evaluate the effect on Duncan, if any, of the October, 1978 work accident. Duncan again related that he was in constant pain. Dr. Stevens observed that Duncan's neck motion was jerky but otherwise Duncan had full range of motion. There was no presence of paraspinous muscle spasms. Dr. Stevens concluded that Duncan suffered from a "degenerative spinal condition."

Dr. Stevens again examined Duncan on March 4, 1981, in a hospital emergency room where Duncan complained of acute arthritic pain. Dr. Stevens recommended bedrest and on March 19, 1981, he observed that Duncan was much improved. Dr. Stevens noted that Duncan's gait was better and that he could stand erect. On May 22, 1981, Duncan returned to Dr. Stevens complaining about his neck, shoulder, left elbow, lateral epicondyle and back. Dr. Stevens, however, had little to offer Duncan.

On June 5, 1981, Dr. Stevens completed a physical capacities evaluation of Duncan. He found that Duncan could lift ten pounds often and twenty pounds occasionally, could walk five hours, stand four hours, and sit three hours per day, and had unimpaired use of his extremities. Dr. Stevens last examined Duncan on November 1, 1983, when Duncan again complained of neck and low back pain. Dr. Stevens noted no change in Duncan's condition.

Records from the University of Tennessee Hospital indicate that Duncan was hospitalized in February, 1979 for complaints of pain. X-rays taken at that time indicated degenerative joint disease but no acute bony abnormality. Dr. Fred Killeffer, who treated Duncan at the hospital, stated in his discharge summary that a myleogram showed no significant reason for Duncan's neck pain. Dr. Killeffer recommended continued use of a TNS unit, which was said to help Duncan's pain considerably. Dr. Killeffer diagnosed severe

cervical strain and mild cervical spondylosis but he believed that Duncan's symptoms would subside in time.

Beginning on February 20, 1981, Duncan was treated by Dr. Anthony Garton for multiple ailments including earache, back pain, and gynecomastia secondary to chronic liver disease and alcohol abuse. On May 20, 1981, Dr. Garton evaluated Duncan's physical capacities. Dr. Garton found that Duncan could lift twenty pounds occasionally and ten pounds frequently. He further found that Duncan could bend and reach occasionally and that Duncan's use of his extremities was unrestricted. Duncan's capacity to walk or stand was found to be restricted, but his capacity to sit was unimpaired.

In an evaluation dated September 8, 1983, Dr. Garton stated that he believed Duncan suffered from some degree of chronic obstructive pulmonary disease which was not aided by Duncan's smoking habits. However, Duncan's lungs were clear with no rales, rhonci or wheezes. Dr. Garton also noted some degree of chronic liver disease as evidenced by an abnormal liver scan in 1981. Dr. Garton further stated that Duncan suffered from some degenerative joint disease and a chronic depressive disorder. Dr. Garton's examination of Duncan's extremities indicated full range of motion with no evidence of joint swelling. Dr. Garton found no motor or sensory loss and no neurological deficit. Dr. Garton concluded that any one of Duncan's disorders considered alone would not be disabling, but, when considered together, "might make a case for total disability." Dr. Garton further acknowledged, however, that "it would be difficult to prove by objective criteria."

On December 23, 1983, Duncan was examined by consulting physician Dr. Sarada Misra. Dr. Misra noted Duncan's medical history, including two prior lumbar laminectomies in 1963 and 1964, ulcer surgery resulting in removal of eighty percent of his stomach in 1963 and breast surgery in

1981.[2] Dr. Misra found that Duncan had stiffness, limited movement and muscle spasms in his back and neck, but had no neurological deficits. Spinal x-rays showed mild degenerative changes in Duncan's lumbar spine and cervical spine.

On January 17, 1984, Dr. W.G. Kennon assessed Duncan's residual functional capacity. Dr. Kennon found that Duncan could lift or carry a maximum of twenty pounds, could lift or carry ten pounds frequently, could stand or walk about six hours per day, and could push and pull in an unlimited capacity. Dr. Kennon further found that Duncan could frequently climb, kneel and crawl, could occasionally stoop, but could never crouch. Dr. Kennon had previously completed a physical capacities evaluation in 1981 in which he similarly observed Duncan's capacity to do light work.

On June 11, 1984, the ALJ rendered his decision. Based on the testimony and the medical evidence, the ALJ determined that Duncan had a severe impairment related to his back which prevented him from returning to either of his prior work activities, but did not meet the criteria of a listed impairment in Appendix 1, 20 C.F.R. § 404, Subpart P. The ALJ further found that as of the time Duncan last met the insured status requirements, December 31, 1982, he had the capacity to perform light work. The ALJ further concluded that Duncan's subjective complaints were not supported by objective evidence in the record. Considering Duncan's work capacity, age, education and prior work experience, the ALJ determined that Rules 202.13 and 202.14 of the vocational guidelines, 20 C.F.R. § 404, Subpart P, Appendix 2, both directed a conclusion that Duncan was not disabled as of December 31, 1982. Accordingly, the ALJ held that Duncan was not entitled to disability insurance benefits and denied his application.

Duncan requested review of the ALJ's decision and on August 28, 1984, the Appeals Council denied his request. Duncan's counsel subsequently submitted letters written by Drs. Garton and Stevens in an attempt to convince the Appeals Council to reconsider its decision. Dr. Stevens stated in his letter dated January 10, 1985, that he believed Duncan met the criteria set forth in listed impairment § 1.05(C) of Appendix 1. He also stated that Duncan's conditions existed in 1982. Dr. Garton stated in his letter dated December 4, 1984, that Duncan suffered from a number of problems, including chronic low back pain, episodic light-headedness, chronic shortness of breath and severe dypsnea, which "essentially incapacitated him." On February 15, 1985, the Appeals Council decided there was no basis for vacating its prior decision and reiterated that the ALJ's decision stood as the final decision of the Secretary.

Duncan brought the present action for review on April 4, 1985, pursuant to 42 U.S.C. § 405(g). On July 9, 1985, the district court filed its memorandum opinion and order denying Duncan's motion for summary judgment, affirming the Secretary's decision and dismissing Duncan's action. This timely appeal followed.

Duncan raises several issues in this appeal. He argues that the ALJ applied the wrong standards in considering his allegations of pain and his multiple impairments, that the Secretary did not give appropriate consideration to the opinion of Dr. Stevens, his treating physician, and that the ALJ did not give him an adequate hearing.

## II.

Pursuant to 42 U.S.C. § 405(g), the findings of the ALJ are conclusive if they are supported by substantial evidence. Accordingly, our review is limited to determining whether there is substantial evidence in the record to support the findings. " 'Substantial evidence' means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Kirk v. Secretary of Health & Human Services*, 667 F.2d 524, 535 (6th Cir.1981), *cert. denied*, 461 U.S. 957, 103 S.Ct. 2428, 77

**2.** Dr. Misra's report mistakenly refers to the breast surgery as occurring in 1982.

L.Ed.2d 1315 (1983), *quoting Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). In determining this question, we examine the evidence in the record "taken as a whole." *Allen v. Califano,* 613 F.2d 139, 145 (6th Cir.1980).

### A.

■ The ALJ made a factual finding that Duncan's subjective complaints were not supported by the objective medical evidence. Duncan argues that with respect to his subjective complaints of pain this finding is not supported by substantial evidence. As support for his contention, Duncan asserts that the ALJ failed to apply the proper standard in considering his allegations of disabling pain.

This court has previously held that subjective complaints of pain may support a claim of disability. *Glass v. Secretary of Health, Education & Welfare,* 517 F.2d 224, 225 (6th Cir.1975); *see also Beavers v. Secretary of Health, Education & Welfare,* 577 F.2d 383, 386 (6th Cir.1978). We have also recognized that determinations of credibility related to subjective complaints of pain rest with the ALJ and that "the ALJ's opportunity to observe the demeanor of the claimant 'is invaluable, and should not be discarded lightly.'" *Kirk,* 667 F.2d at 538, *quoting Beavers,* 577 F.2d at 387. Claims of disability due to pain have been decided on a case by case basis with these general principles in mind.

However, when Congress enacted the Social Security Disability Benefits Reform Act of 1984, Pub. L. No. 98–460, 98 Stat. 1794, it established a new statutory standard for evaluating subjective complaints of disabling pain. Section 3(a)(1) of the Act, presently codified at 42 U.S.C. § 423(d)(5)(A), provides as follows:

An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; *there must be medical signs and findings,* established by medi-

cally acceptable clinical or laboratory diagnostic techniques, *which show the existence of a medical impairment that results from* anatomical, physiological, or psychological *abnormalities which could reasonably be expected to produce the pain* or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), *would lead to a conclusion that the individual is under a disability.* Objective medical evidence of pain or other symptoms established by medically acceptable clinical or other laboratory techniques (for example, deteriorating nerve or muscle tissue) must be considered in reaching a conclusion as to whether the individual is under a disability. (Emphasis added).

This standard is only temporary, however, since the Act also contains a sunset provision. Section 3(a)(3) of the Act provides that § 3(a)(1) will apply only to "determinations made prior to January 1, 1987." 98 Stat. at 1799. At that time, Congress intends to develop a permanent standard based on a study of pain conducted by the Secretary. *See* § 3(b) of the Act, 98 Stat. at 1799–1800; *see also* H.R.Rep. No. 618, 98th Cong., 2d Sess. 3, 13–14, *reprinted in* 1984 U.S. Code Cong. & Ad. News 3038, 3040, 3050–51.

In implementing the temporary statutory standard, Congress intended to codify the approach already embraced by the Secretary through regulations. H.R.Rep. No. 618, 98th Cong., 2d Sess. 13, *reprinted in* 1984 U.S. Code Cong. & Ad. News at 3050. *See Green v. Schweicker,* 749 F.2d 1066, 1069 (3d Cir.1984). The Secretary's regulations provide that subjective allegations of disabling symptoms, including pain, cannot alone support a finding of disability. 20 C.F.R. § 404.1529 (1985).[3] The temporary

---

3. Section 404.1529 provides in full:

If you have a physical or mental impairment, you may have symptoms (like pain,

standard likewise precludes finding disability based solely on subjective allegations of pain. Under the new standard, "[t]here must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from that condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain." S. Rep. No. 466, 98th Cong., 2d Sess. 24, *reprinted in* 130 Cong.Rec. S6221 (daily ed. May 22, 1984). *See Landry v. Heckler,* 782 F.2d 1551, 1553 (11th Cir.1986) (per curiam). The standard does not require, however, "objective evidence of the pain itself." *Green,* 749 F.2d at 1071.

We must apply the temporary statutory standard in the present case. The legislative history of the statute states that the standard is to apply "with respect to cases involving disability determinations pending in HHS or in court on or after the effective date of enactment." H.R.Rep. No. 618, 98th Cong., 2d Sess. 5, *reprinted in* 1984 U.S. Code Cong. & Ad. News 3038, 3042. Since the present case was pending before the Secretary on the date the Act was enacted, October 9, 1984, it is governed by the new statutory standard.

■ As indicated by the legislative history, our analysis under the new standard is essentially two-pronged. *See Landry,* 782 F.2d at 1553–54. First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain. Even though

the ALJ did not examine Duncan's claim of disabling pain under this rubric,[4] the ALJ's findings of fact are sufficient for us to render a decision on this issue. *See Landry,* 782 F.2d at 1553–54 ("Although neither the ALJ nor the Secretary had the benefit of the new law, the ALJ's findings of fact, which were adopted by the Secretary, leave no doubt as to the appropriate result under the new law."). As with any other fact finding, our review is limited to ensuring that substantial evidence supports the findings.

■ The ALJ determined that Duncan had a severe impairment related to his back. This finding is supported by substantial objective medical evidence. Accordingly, Duncan meets the first prong of the statutory standard—there is objective medical evidence of an underlying medical condition.

The ALJ also found that Duncan's subjective complaints, which would include his allegations of disabling pain, were not supported by objective evidence. This is tantamount to a finding that Duncan failed to satisfy the second prong of the new standard. We find that substantial evidence in the record also supports this finding because neither of the alternative tests of the second prong are satisfied.

First, there is substantial evidence to support a finding that there is not objective medical evidence which confirms the severity of the alleged pain. Although Duncan's treating physician and several other physicians noted that Duncan claimed to be having pain, none of the physicians diagnosed the pain as severe or disabling.

Second, there is substantial evidence to support a finding that Duncan's objectively determined medical conditions are not so

---

shortness of breath, weakness or nervousness). We consider all your symptoms, including pain, and the extent to which signs and laboratory findings confirm these symptoms. The effects of all symptoms, including severe and prolonged pain, must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptom. We will never find that you

are disabled based on your symptoms, including pain, unless medical signs or findings show that there is a medical condition that could be reasonably expected to produce those symptoms.

4. The ALJ rendered his decision before enactment of the new standard.

severe that they could be reasonably expected to produce disabling pain. X-rays taken from 1979 through 1983 confirm that Duncan suffers from a degenerative spinal condition but none of them indicate that his condition is severe. X-rays taken at the University of Tennessee hospital in 1979 indicated "mild cervical spondylosis;" x-rays requested by Dr. Stevens in 1981 indicated degenerative arthritic changes, but not to an excessive degree; and x-rays taken in 1983 were interpreted by Dr. Misra as showing only "mild degenerative changes" in the lumbar and cervical spinal regions. Also, physical capacities evaluations of Duncan consistently show that he could perform light work. Dr. Stevens, Dr. Garton and Dr. Kennon all reached this conclusion in evaluations completed in May and June of 1981. Dr. Kennon likewise indicated in a January, 1984 evaluation that Duncan could engage in light work activities. Finally, the medical evidence shows that Duncan has no neurological deficits. Accordingly, the medical evidence does not indicate that Duncan's diagnosed infirmities are so severe that they could reasonably be expected to produce disabling pain.

Since the medical evidence supports a finding that Duncan does not meet either of the alternative tests of the second prong of the statutory standard, we conclude that there is substantial evidence to support the finding that Duncan does not suffer from disabling pain.

### B.

■ Duncan also argues that the Secretary failed to properly consider his multiple impairments by ignoring their combined effect. In support of this argument, Duncan relies heavily on Dr. Garton's May, 1981 report in which he concluded that when Duncan's problems are "all viewed together one *might* make a case for total disability." (Emphasis added).

5. Section 1.05(C) provides:
    C. Other vertebrogenic disorders (e.g., herniated nucleus pulposus, spinal stenosis) with the following persisting for at least 3 months despite prescribed therapy and expected to last 12 months. With both 1 and 2:

Duncan correctly recognizes that the combined effect of multiple impairments is to be considered in making a determination of disability. *See Barney v. Secretary of Health & Human Services*, 743 F.2d 448, 453 (6th Cir.1984) (awarding disability benefits based on a combination of factors); *Trout v. Heckler*, 735 F.2d 965, 965 (6th Cir.1984) (awarding disability benefits based on combination of disabilities). However, we find no error in the ALJ's consideration of Duncan's ailments. As Dr. Garton acknowledged in the above-mentioned report, disability based on Duncan's problems "would certainly be difficult to prove by objective criteria." The ALJ fully reviewed the objective evidence presented by Duncan and noted the diagnoses of multiple ailments. None of the ailments, though severe, were found to meet the criteria set forth in the Secretary's listed impairments, 20 C.F.R. § 404, Subpart P, Appendix 1. Also, even when the combined effect of all the ailments was considered, Duncan still had the residual capacity to perform light work. Accordingly, Duncan's multiple impairments did not render him disabled. We therefore find that the ALJ correctly considered Duncan's impairments, age, education and prior work in applying the vocational guidelines, 20 C.F.R. § 404, Subpart P, Appendix 2, which directed a conclusion of not disabled.

### C.

■ Duncan next argues that appropriate weight was not given to the opinion of Dr. Stevens, his treating physician. In a letter forwarded to the Appeals Council after it had initially denied Duncan's request for review, Dr. Stevens stated his belief that Duncan met the criteria of listed impairment § 1.05(C), 20 C.F.R. § 404, Subpart P, Appendix 1.[5] The Appeals Council

1. Pain, muscle spasm, and significant limitation of motion in the spine; and
2. Appropriate radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss.

was not swayed by this additional material, however, and it maintained its original conclusion that Duncan's impairments were not disabling. Duncan contends that since Dr. Stevens was his treating physician, the letter conclusively established that his impairment meets the criteria of § 1.05(C). The Secretary's rejection of Dr. Stevens' opinion, Duncan argues, runs contrary to the general principle that reports of treating physicians are given greater weight than those of consulting physicians. *See Allen v. Califano*, 613 F.2d 139, 145 (6th Cir.1980).

We disagree. It is true that a treating physician's opinion is afforded more weight than the opinion of a physician employed by the government. However, the ultimate determination of disability rests with the Secretary, not with the treating physician. *Houston v. Secretary of Health & Human Services*, 736 F.2d 365, 367 (6th Cir.1984). Accordingly, the Secretary is not bound by a treating physician's conclusory statement. *King v. Heckler*, 742 F.2d 968, 973 (6th Cir.1984). We believe that in this case the Secretary properly considered Dr. Stevens' conclusory statement and we find that substantial evidence supports the Secretary's conclusion that Duncan's impairment does not meet the conditions of § 1.05(C).

To meet the criteria of § 1.05(C), there must be findings of: (1) "[p]ain, muscle spasm, and significant limitation of motion in the spine;" *and* (2) "[a]ppropriate radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss." The medical opinions of Dr. Stevens contained in his progress notes indicate that Duncan's condition does not satisfy these criteria. Dr. Stevens stated in 1979 that Duncan had no paraspinous muscle spasm. Therefore, an element of § 1.05(C)(1) was not met. Also, Dr. Stevens found that Duncan's reflexes were normal and did not indicate any neurological deficit. Thus, some elements of § 1.05(C)(2) are also not met.

We recognize that Dr. Stevens subsequently stated in his 1985 letter that Duncan has pain, limitation of spinal movement, muscle spasm, and neuropathy with muscle weakness and reflex loss, and stated that these conditions existed when Duncan last met the eligibility requirements in 1982. However, Dr. Stevens' previous medical opinions are contrary to these conclusions. Also, the diagnoses of other physicians contradict Dr. Stevens' 1985 conclusions. For example, in 1983 Dr. Garton found no neurological deficits and no motor or sensory loss. Dr. Misra also found no neurological deficits in 1983, although he did note muscle spasms in Duncan's back. In light of Dr. Stevens' progress notes and the reports of Drs. Garton and Misra, there is substantial evidence to support the conclusion that Duncan's impairment does not meet all the conditions of § 1.05(C).

### D.

Duncan's final claim—that he was not given an adequate hearing—focuses on his lack of representation by counsel at the administrative hearing. Duncan contends that the ALJ failed to adequately inform him of his right to be represented by counsel and also failed to conduct a fair and adequate hearing in the absence of counsel. We disagree with both contentions.

At the hearing, the ALJ specifically asked Duncan if he had received the notice sent by the Secretary which informed him of his right to be represented by an attorney at the hearing. Duncan acknowledged that he had indeed received such a notice. Duncan also stated that he wanted to proceed with the hearing, even though he was not represented by counsel. From this it is clear that Duncan was aware of his right to counsel and that he voluntarily waived that right. Under these circumstances, the ALJ had no further duty to discuss Duncan's right to representation. The ALJ acted properly in being satisfied that Duncan was informed of his right.

We also find that the ALJ conducted an adequate hearing. When a disability claimant is not represented by counsel at the administrative hearing, the ALJ has a special duty to ensure that a full and fair administrative record is developed. *Lashley v. Secretary of Health & Human Services*, 708 F.2d 1048, 1051 (6th Cir.1983). However, even though we scrutinize with care the administrative record when a claimant appears without counsel, the mere fact that a claimant was unrepresented is not grounds for reversal. *Holden v. Califano*, 641 F.2d 405, 408 (6th Cir.1981). Rather, we examine each case on its own merits to determine whether the ALJ failed to fully develop the record and therefore denied the claimant a full and fair hearing.

The record in the present case was not adversely affected by the lack of representation or the relatively short hearing. The brevity of the hearing did not result in unfair or unsupported conclusions, *cf. Lashley*, 708 F.2d at 1052, and Duncan's mistaken responses to several questions did not unfairly taint the ALJ's findings. Duncan's failure to remember the medications he had taken, or the correct date on which he last worked, was simply not significant and was not mistakenly relied on by the ALJ. Further, Duncan has not suggested, and we are unable to determine, what possible further information could have been brought forth at the hearing which would have enhanced a determination of disability. *Cf. Lashley*, 708 F.2d at 1053. The ALJ thoroughly reviewed the evidence presented in this case and adequately discussed in his decision his analysis of Duncan's claims, the medical exhibits and the testimony. We fail to see how, under these circumstances, Duncan has been denied a full and fair hearing.

Accordingly, having found Duncan's arguments to be unpersuasive, and having concluded that substantial evidence supports the final decision of the Secretary, we AFFIRM the judgment of the district court.