848 F.2d 193
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Jetta Jean SAMPLES, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH & HUMAN SERVICES, Defendant-Appellee.
 No. 87-5590.
 United States Court of Appeals, Sixth Circuit.
 May 11, 1988.
 
 Before MILBURN and BOGGS, Circuit Judges, and ANN ALDRICH, District Judge*.
 PER CURIAM.
 
 
 1
 Claimant Jetta Jean Samples appeals from the judgment of the district court denying her application for disability and SSI benefits. For the reasons that follow, we affirm in part, reverse in part, and remand for further proceedings.
 
 I.
 
 2
 Claimant filed an application for disability benefits and SSI on March 19, 1985, alleging a disability onset date of January 1, 1984. She alleged that she was disabled due to diabetes, high blood pressure, a chronic kidney ailment, weak bladder, and poor vision. Additionally, she claimed that she suffered from stomach ulcers, heart damage, and nervousness. Her application was denied initially and upon reconsideration. Accordingly, she requested a de novo hearing before an Administrative Law Judge.
 
 
 3
 The medical record reflects that claimant was hospitalized on August 6, 1984, after she slipped and fell at a gas station. She complained of nausea, headache, and "head swimming." X-rays of the lumbar spine, skull, and left elbow were negative for fractures. She was treated conservatively and released with a prescription for Parafon Forte. The discharge diagnosis was acute lumbosacral strain, contusion of the hips, pelvis, and left elbow, exogenous obesity, cerebral concussion, essential hypertension, and diabetes mellitus. J.A. 95.
 
 
 4
 Claimant was hospitalized at Cocke County Baptist Hospital on December 27, 1984. She complained of nausea, vomiting, abdominal pain, and right upper quadrant pain. She indicated that she had been experiencing pain for two days prior to admission and had been taking Aldomet 250 for a hiatal hernia. Her discharge summary noted that she did not follow a diabetic diet and that she smoked excessively. Her weight was 200 pounds, and her blood pressure was 154/90. Claimant's chest X-ray, upper GI series, and abdominal sonogram were all within normal limits. She was given a dietary consultation and was admonished to stop smoking. The final diagnosis was diabetes mellitus with hyperglycemia, essential hypertension, and exogenous obesity. J.A. 94.
 
 
 5
 On April 18, 1985, claimant was examined by Dr. David H. McConnell of the Family Practice Center of Newport, Tennessee. Claimant reported multiple complaints, including exhaustion and weakness. She stated that she was on a 1500 calorie per day diet; however, she had gained eight pounds since her hospitalization of January 1985. She complained of blurry vision, but stated that she seldom wore her glasses. She reported heart trouble, although she denied a history of myocardial infarction and had never seen a cardiologist. She complained of substernal chest pain occurring daily and also at night with occasional radiation into both arms. She reported nausea, vomiting, and sweating with each episode. She had never used nitroglycerin and indicated that the pain was alleviated by rest.
 
 
 6
 Claimant also complained of hypertension and indicated that she had been medicated for this disorder for "years and years." She complained of dizzy spells, headaches, and blackouts.
 
 
 7
 Claimant further complained of chronic obstructive pulmonary disease dating to 1970. Nevertheless, she continued to smoke two packages of cigarettes per day. She complained of a daily cough productive of one-quarter cup of white phlegm. Although she reported the existence of a hiatal hernia and ulcers, Dr. McConnell noted that her upper GI series from the Cocke County Baptist Hospital was negative. Claimant also complained of kidney and bladder problems and chronic back pain. Her regular medications included Insulin, Tagamet, and Aldomet.
 
 
 8
 Claimant's blood pressure was 124/94, and she weighed 208 pounds. Dr. McConnell stated that he had "known this lady for years and she is emotionally stable." Heart examination indicated regular sinus rhythm without murmurs, thrills, or friction rubs. Examination of the lungs showed no inspiratory wheezing and no rales or ronchi.
 
 
 9
 Examination of the lumbosacral spine revealed sixty degrees of flexion. There was no evidence of paraspinous muscle spasm, and the lumbosacral spine was not tender. Chest and spinal X-rays were normal, as was the electrocardiogram. Dr. McConnell's final diagnosis was diabetes mellitus, essential hypertension, exogenous obesity, chronic obstructive pulmonary disease, and chronic lumbosacral strain. J.A. 103.
 
 
 10
 On September 9, 1985, claimant reported to the Cocke County Baptist Hospital emergency room complaining of chest pain. An EKG showed sinus tachycardia, but was otherwise normal.
 
 
 11
 Claimant was examined by Dr. Joseph H. Mansy on November 25, 1985. Once again, she complained of difficulty breathing. She indicated that dyspnea occurred after walking twenty-five feet or climbing three stairs. Despite the fact that she had reported to Dr. McConnell that she smoked two packages of cigarettes per day, she told Dr. Mansy that she smoked only one pack per day. She also told him that her breathing impairment had not caused any hospitalizations during the past year.
 
 
 12
 Claimant also complained of chest pain occurring one to two times per day upon exertion. She reported depression, headaches, and abdominal discomfort brought on by spicy or greasy foods. Although Dr. Mansy indicated that claimant's upper GI series revealed the presence of ulcers, the only upper GI series produced in the record is negative. Dr. Mansy also noted that claimant complained of back pain, shoulder, elbow, and wrist pain. However, he noted that ambulation was not affected.
 
 
 13
 Claimant's blood pressure was 164/90 in the right arm and 168/98 in the left. She weighed 223 pounds. No rales, ronchi, or wheezes were noted upon lung examination, and no murmur, rub or gallop was noted upon examination of claimant's heart. Dr. Mansy indicated that claimant possessed forty degrees flexion and twenty degrees extension in the lumbar spine. Right and left lateral bending was fifteen degrees. Movements of the cervical spine did not appear uncomfortable, and no restriction of motion was noted. An EKG revealed the presence of a sinus rhythm.
 
 
 14
 Claimant's chest X-ray revealed no evidence of active disease, although claimant complained of dyspnea for three years. Claimant's spinal X-ray revealed mild narrowing of the L5-S1 interspace. The diagnosis was borderline hypertension, dyspnea, chest pain with symptoms suggestive of angina, dyspepsia with a history of peptic ulcer disease, adult-onset diabetes mellitus, chronic back pain with radiographic narrowing of the L5-S1 interspace, probable tension headaches, and multiple arthralgias.
 
 
 15
 Claimant was the only witness to testify at the adminstrative hearing. At the time of the hearing, she was forty-six years old, five feet, four and one-half inches tall, and weighed 200 pounds. She had completed part of the tenth grade and was able to read and write. However, she had never received any vocational training. Her primary occupation was that of housewife and mother, although she did perform some restaurant work ten to twelve years before the hearing.
 
 
 16
 Claimant classified her impairments as very severe. She stated that she was a diabetic and that she had extremely high blood pressure and heart problems. She suffered blackouts, which she attributed to her diabetic condition. She also complained of a kidney disorder, headaches, vision problems, and chest pains.
 
 
 17
 She stated that she was able to do "very little" during a typical day. She performs light housework and attempted to cook, but indicated that her children take care of the dishwashing and laundry. She also stated that she was worried and nervous and that she did not sleep well. She complained of back pain and swelling of her stomach, feet, and legs.
 
 
 18
 After considering the evidence of record, the Administrative Law Judge concluded that claimant possesses the residual functional capacity to perform a full range of sedentary work. He summarized the medical evidence and indicated that although claimant suffers from diabetes, her medical record reveals "none of the normal stigmata associated with diabetes mellitus." He concluded, however, that "[c]onsidering her complaints of dizziness she may wish to avoid work around heights or hazardous machinery." J.A. 16.
 
 
 19
 Claimant requested a review by the Appeals Council. The request was denied. Subsequently, she filed a request for reconsideration. Attached to the request for reconsideration was a letter from Dr. Scott Glass, a psychological examiner, and Peter Watrous, a clinical psychologist. The letter indicated that claimant was seen at Cherokee Mental Health Center on April 15, 1986. At her intake interview, she complained of depressed mood, anxiety, memory loss, sleeplessness, crying spells, and persistent fears that something would happen to her children. A diagnosis of dysthymic disorder was assigned, and psychotherapy and chemotherapy were recommended.
 
 
 20
 The Appeals Council declined to overturn the decision of the Administrative Law Judge even after consideration of the additional evidence submitted by the claimant. Accordingly, claimant sought review in the district court. The case was referred to a magistrate, who concluded that the decision of the Secretary was supported by substantial evidence. The magistrate's Report and Recommendation was adopted in its entirety by the district court.
 
 
 21
 In this appeal, claimant presents the following issues for review:
 
 
 22
 (1) whether the Secretary's conclusion that claimant is not disabled on the basis of a combination of impairments is supported by substantial evidence;
 
 
 23
 (2) whether the Secretary's decision that claimant is not disabled by pain is supported by substantial evidence;
 
 
 24
 (3) whether the Secretary erroneously applied the grids in the face of a significant nonexertional impairment;
 
 
 25
 (4) whether the Secretary correctly analyzed claimant's emotional impairment.
 
 II.
 A.
 
 26
 Claimant argues that her combined impairments preclude her from performing even sedentary work.[1] We agree with claimant's contention that evaluation of disability must reflect the combined impact of her impairments. See, e.g., Trout v. Heckler, 735 F.2d 965 (6th Cir.1984) (per curiam); Hurst v. Schweiker, 725 F.2d 53 (6th Cir.1984) (per curiam). However, we disagree with her contention that the record contains inadequate evidence upon which to base the conclusion that claimant is exertionally capable of performing sedentary work.
 
 
 27
 Claimant does complain of a wide range of impairments. Although she suffers from severe diabetes, it appears to be controlled by insulin. Likewise, her hypertension appears reasonably controlled by medication. Although she complains of heart trouble, claimant denies a history of myocardial infarction. One EKG produced in the record was essentially normal; the other indicated the presence of sinus tachycardia.
 
 
 28
 Claimant's complaints of back trouble also do not mandate the conclusion that she cannot perform sedentary work. Spinal X-rays reveal only minimal disc narrowing, and the limitation on claimant's range of motion is minimal. There is no evidence of muscle spasm, and claimant does not limp. Her allegations of dyspepsia and peptic ulcers appear doubtful in view of the fact that an upper GI series was normal.
 
 
 29
 In short, the mere existence of a laundry list of impairments does not necessarily mandate the conclusion that a claimant is disabled from the performance of any substantial gainful activity. See Houston v. Secretary of Health and Human Services, 736 F.2d 365 (6th Cir.1984). Our review of the record indicates that the Secretary's conclusion that claimant is capable of performing sedentary work is supported by substantial evidence.
 
 B.
 
 30
 Claimant further argues that she suffers disabling pain. In order to determine whether a claimant is disabled by pain, we must consider the medical evidence in light of the analysis set forth in Duncan v. Secretary of Health and Human Services, 801 F.2d 847 (6th Cir.1986).
 
 
 31
 First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.
 
 
 32
 Id. at 853.
 
 
 33
 Claimant's primary complaints of disabling pain include chest pain, back pain, stomach pain, and headaches. No medical basis has been established for the headaches, and no physician has expressed a conclusion that the headaches are disabling. Claimant's abdominal pains are usually brought on by spicy or greasy foods, and the pain is relieved by taking Mylanta. The clinical evidence underlying her allegations of chest and back pain are insufficient to support the conclusion that her pain is disabling. Accordingly, we conclude that the Secretary's decision in this regard is supported by substantial evidence. See Duncan, 801 F.2d at 853-54; see also Gaffney v. Bowen, 825 F.2d 98 (6th Cir.1987) (per curiam) (objective medical evidence did not substantiate claimant's contention that she suffered excruciating pain; consequently, claimant found not disabled by pain).
 
 C.
 
 34
 Claimant's third argument for reversal of the judgment of the district court is her contention that the Secretary erroneously applied the medical vocational guidelines in reaching a conclusion of nondisability. The Administrative Law Judge applied Rule 201.18, Table No. 1 of Appendix 2, which directs a conclusion that a claimant who is exertionally limited to the performance of sedentary work, who is a younger individual, and who has only a limited education is not disabled. Claimant argues that application of the grid was erroneous because she suffers from significant nonexertional limitations.
 
 
 35
 In Kirk v. Secretary of Health and Human Services, 667 F.2d 524 (6th Cir.1981), cert. denied, 461 U.S. 957 (1983), this court held that application of the grid is appropriate only when the components of the grid precisely match the claimant's condition. The grid is not fully applicable when the claimant suffers from nonexertional limitations, the effects of which are not incorporated by the grid.
 
 
 36
 However, the mere allegation of a nonexertional impairment is not sufficient to preclude application of the grid. "Not even a minor nonexertional limitation is enough; the claimant must show an impairment that significantly limits his ability to do a full range of work at a designated level." Kimbrough v. Secretary of Health and Human Services, 801 F.2d 794, 796 (6th Cir.1986) (per curiam); see also Cole v. Secretary of Health and Human Services, 820 F.2d 768 (6th Cir.1987). "By the use of the phrase 'significantly diminish' we mean the additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity." Bapp v. Bowen, 802 F.2d 601, 606 (2d Cir.1986) (footnote omitted).
 
 
 37
 "Whether a given nonexertional condition affects a particular claimant's residual capacity to engage in certain job activities is a question of fact." Smith v. Schweiker, 719 F.2d 723, 725 (4th Cir.1984) (per curiam); see also Cummins v. Schweiker, 670 F.2d 81, 84 (7th Cir.1982). Therefore, if the Secretary's resolution of this issue is supported by substantial evidence, it must be upheld.
 
 
 38
 We believe that the claimant's argument in this regard is well-founded. Claimant complains of dizziness and blackouts, and the ALJ specifically stated that "[c]onsidering her complaints of dizziness she may wish to avoid work around heights or around hazardous machinery." J.A. 16. Nevertheless, he went on to conclude that the presence of these limitations did not preclude claimant from performing sedentary work.
 
 
 39
 We interpret the ALJ's conclusion in this regard as the recognition of a condition which places restrictions upon claimant's ability to work. Thus, we must consider whether the restriction is significant at the sedentary exertional level. Although it may be true that much sedentary work does not encompass working at levels high above the ground, the Secretary's own regulations point out that:
 
 
 40
 Most sedentary occupations fall within the skilled, semi-skilled, professional, administrative, technical, clerical, and benchwork classifications. Approximately 200 separate unskilled sedentary occupations can be identified, each representing numerous jobs in the national economy. Approximately 85 percent of these jobs are in the machine trades and bench work occupational categories.
 
 
 41
 20 C.F.R. Part 404, subpt. P., App. 2, Rule 201.00(a). Because 85 per cent of the unskilled sedentary jobs are in the machine trades and bench work occupational categories, and because the ALJ apparently believed claimant should avoid work around hazardous machinery, the Secretary's conclusion that claimant's ability to work at the sedentary level is not significantly restricted is not supported by substantial evidence.
 
 
 42
 Moreover, as indicated above, claimant does suffer from shortness of breath. The existence of some respiratory impairment is supported by the ventilatory studies in the record. Machine trades and bench work, unskilled jobs at the sedentary level, "by their nature often involve exposure to dust, fumes, and other suspended particulates irritating or intolerable to persons afflicted with respiratory ailments." Thomas v. Schweiker, 666 F.2d 999, 1004 n. 8 (5th Cir.1982) (per curiam). Claimant's respiratory impairment further supports our conclusion that she is entitled to a nonguideline determination.
 
 D.
 
 43
 Finally, claimant contends that the Secretary erred by failing to fully develop the record regarding her psychological impairment. We note that the Secretary apparently failed to follow his own procedure for evaluation of a mental impairment. See 20 C.F.R. Secs. 416.920(a) and 404.1520(a). Because we have concluded that a remand is necessitated by the Secretary's erroneous use of the grid, we need not decide whether a remand is necessary on this ground alone. We do note, however, that claimant is being treated for a psychological impairment. Accordingly, we direct the Secretary to give further consideration to this impairment on remand.
 
 III.
 
 44
 For the reasons stated above, we AFFIRM the judgment of the district court in part, REVERSE in part, and REMAND for further proceedings consistent with this opinion.
 
 
 
 *
 Honorable Ann Aldrich, Judge, United States District Court for the Northern District of Ohio, sitting by designation
 
 
 [1]
 The Secretary argues that this issue was not properly preserved for appellate review because claimant did not identify it in her objections to the magistrate's Report and Recommendation. In Thomas v. Arn, 474 U.S. 140 (1985), the Supreme Court held that "a court of appeals may adopt a rule conditioning appeal, when taken from a district court judgment that adopts a magistrate's recommendation, upon the filing of objections with the district court identifying those issues on which further review is desired." Id. at 155. A waiver to the right of further appeal of a specific issue has been found when, although objections have been filed, the specific objection advanced on appeal was not included in those objections. See Smith v. Detroit Federation of Teachers Local 231, 829 F.2d 1370 (6th Cir.1987); Cheshier v. Bowen, 831 F.2d 687 (7th Cir.1987). We conclude that claimant's objections were sufficient to preserve this issue for review