861 F.2d 719
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Grant BURTON, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH & HUMAN SERVICES, Defendant-Appellee.
 No. 87-1945.
 United States Court of Appeals, Sixth Circuit.
 Nov. 10, 1988.
 
 Before WELLFORD and DAVID A. NELSON, Circuit Judges, and RICHARD B. McQUADE, District Judge.*
 PER CURIAM.
 
 
 1
 The plaintiff-appellant, Grant Burton, suffers from back pain and pulmonary impairment. He is also missing three fingers from his right hand. Mr. Burton is appealing from a district court judgment upholding a denial of social security disability benefits. For the reasons set forth below, we shall affirm the action taken by the district court.
 
 I.
 
 2
 Mr. Burton is a 55-year old man with an eleventh grade education. He has worked as a die setter, machine maintenance person, supervisor, and assistant foreman. He says that he became unable to work on June 20, 1982, due to a back injury, hip pain, and the amputation of his three fingers.
 
 
 3
 The medical evidence consists of reports by several doctors who examined the plaintiff. The first is that of Dr. Lewis, with whom the plaintiff began treatment on June 23, 1982. Dr. Lewis reported that Mr. Burton had lumbosacral pain without radiation and that he had no history of back trouble. On two examinations the following month Dr. Lewis reported that Mr. Burton had no lower back deformity or definite muscle spasm. Dr. Stephen Lewin, a radiologist, reported, "The lumbar spine was examined in AP and lateral projections and reveals very minimal degenerative changes and calcification of the abdominal aorta and no other evidence of any other abnormalities are [sic] present."
 
 
 4
 Mr. Burton was examined by Dr. Schwartz on March 14, 1983. Dr. Schwartz recommended that exposure to atmospheric pollutants be avoided, due to damage to Burton's pulmonary system. Further, because of "musculoskeletal disorders," Mr. Burton should avoid work placing stress on the lower back, and "any situation that would cause bending, lifting, sitting and stooping in a repetitive manner" would be contraindicated.
 
 
 5
 At the request of the Secretary, Mr. Burton was examined by Dr. Mushin Al-Rawi on May 17, 1983. Dr. Al-Rawi wrote that spinal motion was somewhat painful, deep tendon reflexes were absent in the lower limbs (though present in the upper limbs), but there was no motor deficit. Pulmonary function tests produced results between 48 percent and 67 percent of predicted. Dr. Al-Rawi concluded that "the patient has limited tolerance to physical exertion because of chronic back pain. I do not anticipate that the patient would be able to tolerate any degree of physical activity which requires prolonged walking, excessive bending, or lifting."
 
 
 6
 On September 20, 1983, Mr. Burton had an electrodiagnostic examination conducted by Dr. Rottenberg. That doctor reported that he found abnormal results at the S-1 level, but the results were otherwise normal.
 
 
 7
 At a hearing before an administrative law judge on January 25, 1984, Mr. Burton testified that he was in constant pain, which was worse on the right side of his back. He also testified that he didn't think he could walk a whole block, and that "Every time I walk I have a problem with pain. I think I'm going to fall down, and if I don't fall down, but it's always the pain when I put the right leg down." When asked what he did all day, Mr. Burton said that he watched TV, took baths, lay down on a heating pad, and read books. With regard to the severed fingers of his hand, Mr. Burton noted that he lost his fingers in 1972, and he still was able to write with that hand. There was some dispute at the hearing over whether, as was said in his disability report, he was able to "play a little piano" and "write songs as I am able." At the administrative hearing Mr. Burton denied that he ever played the piano in his life and asserted that he could not do much with his right hand because of the amputation and that he couldn't do much with his left hand because of nervousness.
 
 
 8
 A second administrative hearing was held on May 6, 1985. Vocational expert Peter Fotiu was brought in to testify at this hearing. Mr. Fotiu classified Mr. Burton's previous jobs as heavy, unskilled or semi-skilled work; therefore, Fotiu concluded, Mr. Burton would not be able to return to any of his former jobs. No skills were transferable from these jobs, according to the testimony. It was the expert's opinion that Mr. Burton might be able to do light, unskilled work, such as janitorial work or visual inspection work. The witness added, however, that since this was light work Mr. Burton would have to be able to stand for at least six out of eight hours. If one believed that he could not stand for more than a few minutes at a time, these jobs would be out of the question.
 
 
 9
 In a decision rendered on July 29, 1987, the ALJ recommended that disability benefits be denied. The ALJ found that Mr. Burton had no impairment that met the listings in Appendix 1, Subpart P, Regulations No. 4. The ALJ also found that Mr. Burton's subjective complaints were not supported by objective medical evidence, and that because Mr. Burton retained the residual functional capacity to perform light work, under the criterion of Rule 202.10 of Table No. 2, Appendix 2, Subpart P, Regulations No. 4, a nondisability finding was in order.
 
 
 10
 The appeals council declined review, and this action ensued. Adopting the recommendation of a magistrate, the district court concluded that there was substantial evidence to support the agency's determination that Mr. Burton could perform "substantially all of" the activities listed as characteristic of light work.
 
 II.
 
 11
 Mr. Burton contends that the Secretary erred in determining that he did not have a listed impairment. Mr. Burton also contends, with somewhat more emphasis, that the Secretary erred in determining that he was capable of performing light work for the purposes of the "grids" in Appendix 2. We shall consider these arguments in turn.
 
 
 12
 * Section 1.05(c) of Appendix 1 of Subpart P of Regulations No. 4 lists impairments that may be sufficient to warrant a finding of "disabled" for a disability claimant who possesses one or more of the impairments and who meets certain duration requirements. One of the listed impairments is:
 
 
 13
 "c. Other vertebrogenic disorders ... with the following persisting for at least three months despite prescribed therapy and expected to last twelve months with both one and two:
 
 
 14
 1. pain, muscle spasm, and significant limitation of motion in the spine;
 
 
 15
 2. appropriate radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss."
 
 
 16
 Mr. Burton argues that his subjective claims of pain ("... every time I walk I have a problem with pain") together with Dr. Al-Rawi's observation of a lack of reflex in deep tendons in the lower extremities prove that he meets the standard of Sec. 1.05(c).
 
 
 17
 On medical evidence such as this, we cannot say that the agency's findings were without substantial support in the record. See Hale v. Secretary of Health and Human Services, 816 F.2d 1078 (6th Cir.1987). Mr. Burton's back problems were evaluated by at least four different doctors, and only one of them--Dr. Al-Rawi--found any reflexes to be absent. Dr. Al-Rawi did not note any other motor or reflex impairments. Dr. Lewis reported that there was no definite muscle spasm, and neither Dr. Schwartz nor Dr. Al-Rawi reported any muscle spasm.
 
 B
 
 18
 Mr. Burton argues further that the Secretary did not correctly apply the "grid" in Appendix 2 of Subpart P of Regulations No. 4 because the Secretary found that the claimant retained the residual functional capacity to do light work. "Light work" is defined in 20 C.F.R. Sec. 404.1567(b) as "the ability to do substantially all" of the following activities: lifting no more than 20 pounds at a time, with frequent lifting or carrying of objects weighing up to 10 pounds, a good deal of walking or standing, and sitting most of the time with some pushing or pulling of arm or leg controls. Mr. Burton contends that the Secretary's finding that he had a residual functional capacity to perform light work was incorrect--first, because he has reduced dexterity in his right hand, and second because he is not capable of "a good deal of walking or standing" under the definition. Mr. Burton's assertions of his own reduced capacity are subjective, however, and need not be believed unless supported by objective medical evidence. By plaintiff's own testimony, he is still capable of writing with his right hand, and no physician who examined him found that he should refrain from walking or standing; the only evidence that comes close is Dr. Al-Rawi's caution against "prolonged walking," a different matter from simply walking or standing. Also, 20 C.F.R. Sec. 404.1567(b) applies not just where all of the listed activities are present, but where "substantially all" the activities are present.
 
 
 19
 Mr. Burton argues, on appeal, that because he is incapable of performing sedentary work, he should not be considered capable of performing light work, a more taxing form of physical labor. We believe there is substantial evidence, however, that Mr. Burton remains capable of performing sedentary work.
 
 
 20
 The claim that the Secretary did not give sufficient weight to Dr. Al-Rawi's recommendation that Mr. Burton not engage in any physical activity which "requires prolonged walking, excessive bending, or lifting," is belied by the fact that the Secretary noted that Burton is restricted from doing a great deal of bending or climbing. The medical evidence showed that plaintiff's EMG was essentially normal, suggesting that he should be able to engage in some standing and walking for limited periods of time. Given these facts, it would be difficult to say that the Secretary's decision that the plaintiff had a residual functional capacity to perform light work was erroneous. Insofar as the plaintiff relies on the amputation of three fingers of his right hand, it should be noted that the plaintiff engaged in light work for 10 years after the amputation.
 
 
 21
 Plaintiff also argues that the ALJ, in presenting certain hypothetical questions to vocational expert Fotiu, failed to mention the "tingling pain" in Mr. Burton's right hand. In light of the conflict between the disability report filed by Mr. Burton and his testimony at the first administrative hearing, however, the ALJ was entitled to discount plaintiff's subjective complaints of pain.
 
 
 22
 The determination of how much credibility to attach to testimony on subjective complaints is one best made by the ALJ, not this court. Examining the objective medical evidence under the standard of Duncan v. Secretary of HHS, 801 F.2d 847 (6th Cir.1986), we cannot say that there was not substantial evidence to support the ALJ's finding that Mr. Burton does not suffer from disabling pain.
 
 
 23
 AFFIRMED.
 
 
 
 *
 The Honorable Richard B. McQuade, United States District Judge for the Northern District of Ohio, sitting by designation