881 F.2d 1075
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Kenneth R. CURTIS, Plaintiff-Appellant,
v.
Otis R. BOWEN, M.D., Secretary of Health and Human Services,
Defendant-Appellee.
 No. 88-2042.
 United States Court of Appeals, Sixth Circuit.
 Aug. 11, 1989.
 
 Before MERRITT and DAVID A. NELSON, Circuit Judges, and JAMES D. TODD, District Judge*.
 MERRITT, Circuit Judge.
 
 
 1
 The primary issue in this Social Security disability insurance case is whether substantial evidence supports the Secretary's finding that the claimant, Kenneth R. Curtis, has the residual functional capacity to perform a significant number of light exertional level jobs in spite of his alleged disabling pain in combination with his physical infirmities.
 
 
 2
 Kenneth Curtis is presently thirty-nine years old. He received his GED in the military and previously worked as a house painter and truck driver. He last was employed as a parts and service manager with an electronics firm on January 6, 1982. Curtis underwent two laminectomies, the second in November, 1982, and subsequently saw several physicians. Dr. Shiff, the original orthopedist who treated Curtis, noted Curtis' constant complaints of pain and decreased range of motion, although an electromyography and nerve conduction study were within normal limits.
 
 
 3
 Dr. Wray, a neurosurgeon, treated Curtis from May 1983 through March 1984. Dr. Wray tried several courses of treatment, but all were unsuccessful. He did state that he could point to no definite neurological deficit that would account for Curtis' alleged disabling pain. Upon Curtis' discharge in March 1984, Dr. Wray ultimately diagnosed Curtis as having a failed back syndrome and personality disorder. Dr. Wray referred Curtis to a psychological service that found a large portion of Curtis' pain was not organic in origin.
 
 
 4
 Dr. Caraway saw Curtis in November 1983 and remarked on Curtis' low threshold of pain. Dr. Caraway also remarked that "the absence of any measurable atrophy would tend to belie the severity of his [Curtis'] symptomatology." Joint Appendix at 352.
 
 
 5
 Curtis also underwent a psychological evaluation by Dr. Cooke in which she stated that Curtis "may be having more difficulty coping with his chronic pain that he is able to acknowledge. A significant decrease in his activity level suggests there may be a 'learned' component to his pain." Joint Appendix at 208.
 
 
 6
 After moving to another state, Curtis ultimately was referred to Dr. Rapp, a neurosurgeon who found Curtis to be unemployable. Finding "severe back pain radiating to both extremities," Dr. Rapp elected to implant a dorsal column stimulator. Joint Appendix at 373. This operation was unsuccessful, and Dr. Rapp attempted another operation in February 1986, which was also unsuccessful. Dr. Rapp's assessment of Curtis' residual functional capacity in November 1985 and his evaluation of Curtis in July 1986 comprise the strongest proof of Curtis' debilitating pain.
 
 
 7
 In April 1986 Dr. Fuller, a psychiatrist, evaluated Curtis. Fuller noted some discrepancies between Curtis' complaints of pain and his behavior. Fuller concluded that Curtis had a psychogenic pain disorder and that his psychiatric prognosis was poor.
 
 
 8
 Curtis consulted another orthopedic surgeon, Dr. Faremouth, who prescribed Darvocet for pain, diagnosed lumbar root syndrome, told Curtis to avoid heavy lifting and stay in bed. Curtis' latest x-rays failed to reveal any evidence of a herniated disc. While there was evidence of minimal bulging disc at L4-5 and L3-4 and evidence of a laminectomy defect at L4-5 level on the right side, there was no evidence of a gross abnormality.
 
 
 9
 Dr. Sobel, the Social Security medical advisor, reviewed the medical evidence and concluded that Curtis did not have an impairment that met the requirements of the Listings. Although Dr. Sobel diagnosed post laminectomy syndrome, he indicated that Curtis was able to work with certain limitations. Although Dr. Sobel recommended that Curtis avoid repetitive bending, stooping and squatting, Dr. Sobel said that Curtis remained capable of lifting up to 50 pounds and had no limitations as to sitting, standing or walking.
 
 
 10
 Pauline Pegram, the vocational expert, testified that Curtis had acquired skills that were transferable to light semi-skilled jobs. Based on the limitations outlined by Dr. Sobel, Curtis could perform a limited range of light and a full range of sedentary jobs. She did testify that 60% of 24,000 sedentary unskilled jobs potentially available to Curtis would allow him to sit or stand at will. She also noted that even if Curtis had a mild psychiatric impairment, he would still be able to perform the jobs she identified.
 
 
 11
 Curtis contends that he has met the test for disabling pain set forth in Duncan v. Secretary of Health & Human Services, 801 F.2d 847, 853 (6th Cir.1986). Although Curtis has met the first prong of the two-part test for analyzing allegations of debilitating pain under Duncan, there is substantial evidence in the record as a whole to support the ALJ's finding that Curtis' allegations of disabling pain are not supported by objective medical evidence. Curtis' latest x-rays reveal no gross abnormalities. Additionally, there are medical reports that indicate a lack of organic foundation for Curtis' complaints. The vocational expert took into account a need on the part of the claimant to sit and stand at will as well as a psychological limitation. She still found a significant number of jobs in the national economy which Curtis could perform. While Curtis concededly has a medical condition producing some pain, there is objective medical evidence from which the ALJ could have found that Curtis was not suffering from disabling pain.
 
 
 12
 For the foregoing reasons, we affirm the decision of the District Court.
 
 
 
 *
 The Honorable James D. Todd, Judge of the United States District Court for the Western District of Tennessee, sitting by designation