856 F.2d 195
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Stella O. MARECLE, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 87-1815.
 United States Court of Appeals, Sixth Circuit.
 Sept. 7, 1988.
 
 Before KEITH, KENNEDY and ALAN E. NORRIS, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff, Stella Marecle, was denied Social Security disability benefits by the Secretary based on the conclusion of an Administrative Law Judge (ALJ) that Marecle was able to perform her past relevant work. Marecle filed this suit in the United States District Court for the Eastern District of Michigan, challenging the Secretary's findings. The case was referred to a Magistrate, who recommended that the Secretary's decision be reversed because she did not feel that it was supported by substantial evidence. The District Court rejected the Magistrate's recommendation, and affirmed the Secretary's decision. Marecle appeals, arguing that her position as a cashier was not past relevant work and that the Secretary's determination that she retained the residual functional capacity to do light work was not supported by substantial evidence. Because we believe that the Secretary's decision was supported by substantial evidence, we AFFIRM.
 
 
 2
 Marecle alleged that she became disabled on July 12, 1982 due to arthritis and high blood pressure. On July 27, 1984, the Secretary issued a decision that plaintiff was not entitled to disability benefits at that time. That decision became final and binding and was res judicata through that date. She then filed the application now before this court on February 22, 1985, alleging disability. Because the first decision is res judicata, our inquiry is limited to the question of whether she was disabled as of July 27, 1984.
 
 
 3
 Plaintiff testified that she last worked on July 12, 1982. The last 17 of her 22 years of employment were at the hydromatic plant of General Motors in the Canteen. She claims to have stopped working because her treating physician, Dr. Baker, told her that the only thing that would help her arthritis would be to be off her feet, doing no lifting, bending or stooping. While employed at Canteen, she performed various jobs including cashiering, working as a grill cook, and working as a kitchen cook.
 
 
 4
 She also testified that she experiences back pain below her belt line in her back. The pain, which she attributes to arthritis, travels into her neck, and shoulders. Her physician keeps her prescriptions filled over the phone due to lack of money. Thus she has not been examined by Dr. Baker since 1985. She described her back pain as constant. The pain was aggravated when she reached, bent or stooped. She also has high blood pressure. The ALJ did not find her testimony to be credible:
 
 
 5
 For the allegedly severe pain, the claimant only takes Empirin # 3 before she goes to bed at night. She usually treats her pain with buffered aspirin. The claimant testified that she has not been hospitalized for many years. At a lengthy hearing, she appeared to be comfortable. Her demeanor was inconsistent with her testimony. In Exhibit 31, the claimant admitted that she can sit, stand, and walk for periods that considerably exceeded the limitations alleged at the hearing.
 
 
 6
 When all of the evidence is viewed as a whole, I must find that since July 28, 1984, the claimant has had the capacity to perform her light past relevant work of cashier. Some discomfort does exist, but I believe that it was considerably overstated at the hearing. The claimant's testimony is not very credible.
 
 
 7
 Joint Appendix at 12-13. The ALJ's interpretation seems reasonable since plaintiff testified that she can partake in some physical activity. She does some cooking, washes dishes, and occasionally does laundry.
 
 
 8
 Numerous doctors have examined Marecle over the years and their findings are part of the record. Marecle's treating physician, Dr. Baker, issued several reports on plaintiff's condition. In a letter dated March 12, 1985 Dr. Baker stated that
 
 
 9
 On physical examination the only abnormalities at the time were some minor degenerative changes in the joints. There was a decrease pulse in the left foot, there was no pain on straight leg raising, and good range of motion in the joints.
 
 
 10
 It was my feeling she had a chronic pain problem, probably related to trauma and degenerative arthritis. X-rays of the lumbosacral spine, left hip and both feet were taken, and that report is included. She had additional x-rays taken in August of 1982, and I will also enclose that report. Basically she had mild degenerative changes, and some osteoporosis, all of which probably contributed to some discomfort.
 
 
 11
 * * *
 
 
 12
 * * *
 
 
 13
 In general as far as I can tell this lady has degenerative/traumatic arthritis, and simply has worked on her feet over a number of years reaching a point where she can no longer do this because of continuing pain and discomfort. While medication may help in terms of relief of symptoms I do not think she is going to be able to carry on any type of employment where she has to be on her feet for prolonged periods of time.
 
 
 14
 Joint Appendix at 113-14. Subsequent letters from Dr. Baker essentially repeat his view that Marecle is disabled, but he notes that her condition remained unchanged.
 
 
 15
 Other physicians who also examined plaintiff submitted evidence before the ALJ. Dr. Sobel, a medical advisor, reported that plaintiff was being treated for arthritis and osteoporosis, or thinning of the bones, in the lumbar spine. He then testified that the plaintiff's impairments do not meet or equal any of the Listings of Impairments. Dr. Denson, who examined plaintiff on December 1, 1982, indicated that while she does have a mild osteoporosis, she is able to do light work, with the only restriction that he noted being that she can only lift five to ten pounds.
 
 
 16
 On December 5, 1983, she was examined by Dr. Paul Kelly. He found no orthopedic disability whatsoever, and felt that she would be able to return to her regular work. A Dr. Gerisch also examined her and noted the presence of degenerative arthritis, hypertension under good control, and osteoporosis, but did not find any objective evidence of neurological deficit or impaired function. Id. at 60-61. Dr. Gerisch also stated that "[t]his woman described her work to me and I do not feel that her work has had anything to do with either causing or aggravating any of the above diagnoses." Id. at 125.
 
 
 17
 Finally, a Dr. Pacifico examined plaintiff on April 4, 1985. While she reported that plaintiff walked with a slight limp and had some reduced ranges of motion, the x-rays showed "minimal degenerative change" and arterial calcifications. Id. at 132-34A. Furthermore, she reported that there was no joint swelling or edema, her muscle strength is normal, with no signs of atrophy, and that she has good hand grip. Dr. Pacifico's conclusion that her degenerative disease in her lumbar spine and left hip, "is not very well controlled with pain medications," seems based primarily on plaintiff's subjective complaints of pain.
 
 
 18
 The ALJ concluded that plaintiff had the ability to perform her past relevant work as a cashier, which meant that she was ineligible for disability under 20 C.F.R. Sec. 404.1520(e). Because of this finding, the ALJ found it unnecessary to continue with further parts of the sequential evaluation. Plaintiff contends that the ALJ erred in finding that the job of a cashier was "past relevant work." She argues that her job at the Canteen involved much more than being a cashier, and that there is no evidence of exactly when, during the 17 years she worked there, she worked as a cashier. We find these arguments without merit. First, while the record does not show exactly when, during the 17 years she worked as a cashier, she testified that she was a cashier for a period of at least two years at one point during her employment. This testimony, along with the fact that plaintiff does not deny that she worked as a cashier, leads to the conclusion that the ALJ was correct when he determined that she had worked as a cashier in the relevant time period.
 
 
 19
 Furthermore, it is irrelevant if plaintiff is unable to perform some portions of her former job at the Canteen if she is able to perform her former type of work, namely, that of a cashier. Plaintiff must prove "an inability to return to [her] former type of work and not just to [her] former job." Studaway v. Secretary of Health and Human Services, 815 F.2d 1074 (6th Cir.1987). Thus, if the evidence supports the ALJ's conclusion that plaintiff was able to do the job of a cashier, then we must affirm the Secretary's denial of benefits.
 
 
 20
 Examining the ALJ's conclusion that that she was able to work as a cashier, we first note that the vocational expert testified that the job of a cashier involves light work, which is defined as
 
 
 21
 lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.
 
 
 22
 20 C.F.R. Sec. 404.1567(b).
 
 
 23
 We believe that there is substantial evidence to support the ALJ's conclusion that plaintiff is capable of performing the light work of being a cashier. While some of Dr. Baker's evaluations state that plaintiff is incapable of any gainful activity, his letter of March 10, 1983 states that "I do not think she is going to be able to carry on any type of employment where she has to be on her feet for prolonged periods of time." Joint Appendix at 114. Even if the opinion he expressed in this letter was supported by objective medical evidence, the restrictions he suggests would not preclude employment as a cashier, where she could presumably sit down most of the time.[1]
 
 
 24
 Also, the testimony of some of the other doctors suggests that she would be capable of working as a cashier. Dr. Kelly found no disability whatsoever, and Dr. Gerisch concluded that her work had nothing to do with either causing or aggravating her condition. Even Dr. Denson's report, which indicated that plaintiff had mild osteoporosis and could not lift more than 5 to 10 pounds, does not preclude this form of light activity because there is no evidence that cashiers would be required to lift that much weight.[2]
 
 
 25
 While there is ample evidence in the record that plaintiff suffers from osteoporosis and arthritis, there is no objective medical evidence that her condition is severe enough to cause the amount of pain that she claims. Only Dr. Baker suggests that her medical condition is totally disabling, and his findings were disputed by a number of the other doctors, and were inconsistent with other statements that he has made.
 
 
 26
 Finally, the ALJ specifically found that plaintiff's testimony is incredible. This is within the ALJ's discretion. Thus, her subjective claims about the severity of the pain can be discounted.
 
 
 27
 For these reasons, we AFFIRM.
 
 KEITH, Circuit Judge, dissenting:
 
 28
 For the reasons stated in the report and recommendation by Magistrate Morgan--with one exception--I respectfully dissent. In finding that there was not substantial evidence to uphold the Secretary's decision, I would apply the pain standard set forth in Duncan v. Secretary of Health & Human Services, 801 F.2d 847 (6th Cir.1986), and not the older standard articulated in Beavers v. Secretary of Health, Education & Welfare, 577 F.2d 383 (6th Cir.1978). My conclusion, however, remains the same: I would reverse the district court's decision and remand the case to order the payment of benefits.
 
 
 
 [1]
 It is important to remember that all of the medical evidence suggests that plaintiff's condition has not gotten any worse in the last few years. Yet, Dr. Baker's conclusions about plaintiff's ability to engage in any substantial gainful employment changed over time. This inconsistency alone could lead the ALJ to legitimately discount Dr. Baker's testimony
 
 
 [2]
 While in order to be considered capable of performing a wide range of light work a person must be able to do substantially all of the activities listed in the regulations, including frequently lifting objects up to 10 pounds, the regulations also would consider a job that involves no lifting of weights as light activity if it involves sitting most of the time, as the job of a cashier would. Thus, plaintiff's argument that Dr. Denson's report is somehow inconsistent with the ALJ's findings is without merit