865 F.2d 257
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Mary J. COBB-RUSNELL, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 88-1096.
 United States Court of Appeals, Sixth Circuit.
 Dec. 20, 1988.
 
 Before KENNEDY, RALPH B. GUY, Jr., and RYAN, Circuit Judges.
 PER CURIAM.
 
 
 1
 Claimant, Mary Cobb-Rusnell, appeals from the denial of social security disability benefits (DIB). Although the DIB application was not filed until March 17, 1986, a disability onset date of November 27, 1977, is claimed. Claimant last met the disability insured status requirement on December 31, 1983.
 
 
 2
 Cobb-Rusnell's claimed disability is predicated upon a back injury, heart condition, and emphysema. Her DIB application was denied at all preliminary administrative levels and ultimately by an administrative law judge (ALJ) after a hearing. The Appeals Council denied review and claimant's appeal to the district court resulted in the court concluding that substantial evidence supports the Secretary's denial of benefits.
 
 
 3
 Upon a review of the full record we conclude, as did district Judge Hillman, that the Secretary's decision is supported by substantial evidence. Accordingly, we affirm.
 
 I.
 
 4
 Claimant was employed by General Motors from 1969 until 1977 when she stopped working as a result of a back injury occasioned by lifting. Since that time she has been drawing workers' compensation benefits and early retirement benefits from General Motors. While at General Motors she worked primarily as a press operator, spot welder, and assembler. The vocational expert witness (VE) who testified at the hearing indicated that the press operator work was of a medium exertional nature and that the work as a spot welder and assembler fell into the light exertion classification. The ALJ, in denying benefits, determined that claimant had a severe back impairment and asthma, but that prior to December 31, 1983, her "past relevant work as a welder and assembly line production worker did not require the performance of work-related activities precluded by the above limitation(s)." (App. 16). The ALJ also concluded that "[t]here is no evidence prior to December 31, 1983, that the claimant suffered from a cardiac impairment." (App. 15).
 
 II.
 
 5
 The primary evidence in support of Cobb-Rusnell's claim of disability consists of her own subjective complaints. It is clear that the Secretary's regulations and case law from this circuit preclude a finding of disability based on subjective allegations. The cases cited by claimant to the contrary all predate the Social Security Disability Benefits Reform Act of 1984 and our decision in Duncan v. Secretary of Health and Human Services, 801 F.2d 847 (6th Cir.1986).[1] In Duncan we set forth a two-pronged test to be applied to subjective symptomatology. First, we look to see if there is objective medical evidence of an underlying medical condition. If there is, we next examine (1) whether the objective medical evidence confirms the severity of the alleged symptoms arising from the condition or (2) whether the objectively established medical condition is of such severity that it can reasonably be expected to produce the symptomatology to the intensity complained of by the claimant. Against this backdrop, we now analyze the allegations of disability advanced by the claimant.
 
 A. The Back Problem
 
 6
 After the lifting incident at work which apparently precipitated claimant's back problem, she entered the hospital on December 15, 1977, with back pain complaints. On January 4, 1978, a facette rhizotomy (nerve block) operation was performed which relieved Cobb-Rusnell's complaints of pain. All subsequent tests were within normal limits including x-rays, a myelogram, and bone imaging. Two EMGs performed in 1978 were well within normal limits. Although claimant continued to make periodic visits to Dr. Potter relative to back complaints, all clinical testing continued to be negative. Dr. Potter viewed claimant as disabled from heavy manual labor and prescribed only conservative treatment for the back problems.
 
 B. The Heart Condition
 
 7
 Claimant has been diagnosed as having probable episodes of premature auricular tachycardia. She was placed on Lanoxin and Calan which appeared to control her tachycardia. The hospitalization that resulted in this diagnosis occurred after the claimant's insured status expired. Claimant also had a heart catheterization which revealed normal coronary arteries. The medical records clearly support a finding that claimant's heart problems are controllable by medication and were not disabling as of the time her insured status expired.
 
 C. Asthma
 
 8
 Cobb-Rusnell's most serious claim of disability grows out of her respiratory problems. The Secretary does not disagree that claimant suffers from reduced pulmonary capacity; however, this condition does not rise to the level of severity that would preclude all work activity. The Listings for chronic pulmonary insufficiency are found in 20 C.F.R. Part 404, Subpart P, Appendix 1, Sec. 3.02, Table I. In order to meet the Listing, Cobb-Rusnell must exhibit an FEV1 of 1.2 or less and an MVV of 48 or less, after bronchodilation. She did not meet the appropriate Listing; her FEV1 was 1.28 and her MVV was 69.9. Claimant argues that the FEV1 indicates minimal response to bronchodilators, but ignores the requirement that both FEV1 and MVV be significantly low.
 
 
 9
 Additionally, Table II sets forth the standard of the Listings for chronic restrictive ventilatory disorders. It requires that vital capacity (VC) be 1.4 or less. Claimant's VC was 2.52 pre-bronchodilator and 3.12 post-bronchodilator. Table III-A establishes the measurements for chronic impairment of gas exchange. It requires that when the PCO2 is 30 or less (claimant's was 24.9), the PO2 must be equal to or less than 65 mm/Hg. Cobb-Rusnell's test results were 68.5.
 
 
 10
 We also note that claimant continued to work at General Motors for several years with her pulmonary problems and when she finally left, it was due to a back injury.
 
 
 11
 Although Cobb-Rusnell's pulmonary problem places certain environmental restrictions on the work she can perform, it is not in and of itself disabling.
 
 III.
 
 12
 When viewing the medical evidence in its entirety and after considering claimant's medical problems individually and in combination, we conclude that the record contains substantial evidence to support the Secretary's denial of benefits.[2]
 
 
 13
 AFFIRMED.
 
 
 
 [1]
 The Secretary's regulations promulgated which reflect the requirements of the Social Security Disability Benefits Reform Act of 1984 provide:
 If you have a physical or mental impairment, you may have symptoms (like pain, shortness of breath, weakness or nervousness). We consider all your symptoms, including pain, and the extent to which signs and laboratory findings confirm these symptoms. The effects of all symptoms, including severe and prolonged pain, must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptom. We will never find that you are disabled based on your symptoms, including pain, unless medical signs or findings show that there is a medical condition that could be reasonably expected to produce those symptoms.
 
 
 [20]
 C.F.R. Sec. 404.1529
 
 
 [2]
 Claimant's own description of her daily activities also supports the Secretary's determination. As noted by the ALJ:
 The claimant testified that currently she lives alone in a mobile home. She indicated that she has a drivers' license and that she does drive an automobile without any difficulties. She said that her hobbies include reading, crocheting, watching television and going to a weight control class. She indicated that she could take care of all of her personal needs and does any housework that needs to be done around her mobile home. She stated that she has a male friend with whom she goes out to eat at various local restaurants. Also, the claimant said she sees her grandchildren at their home in Lansing, Michigan, a couple of times per year and they visit her at her home a couple times per year. The claimant described camping close to her home at a river in a travel trailer that she owns (the trailer being taken to the site by friends).
 (App. 10-11).