831 F.2d 297
 Unempl.Ins.Rep. CCH 17,884
Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Kay M. SHAVERS, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH & HUMAN SERVICES, Defendant-Appellee.
 No. 86-2059.
 United States Court of Appeals, Sixth Circuit.
 Oct. 22, 1987.
 
 Before KEITH, MILBURN and ALAN E. NORRIS, Circuit Judges.
 PER CURIAM:
 
 
 1
 Plaintiff, Kay M. Shavers ("Shavers"), appeals from the district court's order granting summary judgment in favor of the Secretary. For the reasons set forth below, we AFFIRM.
 
 
 2
 Shavers filed an application for disability benefits pursuant to the Social Security Act, 42 U.S.C. Secs. 416(i), 423, alleging disability dating from 1976. This application was denied originally by the Social Security Administration on May 25, 1984, and on reconsideration on June 8, 1964.
 
 
 3
 A hearing was requested and held before an Administrative Law Judge ("ALJ") on April 15, 1985. On June 28, 1985, the ALJ again denied disability benefits. This decision was affirmed by the Appeals Council on September 11, 1985, and became the final decision of the Secretary.
 
 
 4
 Shavers then filed suit in the United States District Court for the Eastern District of Michigan, seeking judicial review of the Secretary's decision pursuant to 42 U.S.C. Sec. 405(g). The action was assigned to a Magistrate, who recommended that the district court grant appellee's motion for summary judgment in her Report and Recommendation dated May 22, 1986. The district court, DeMascio, J., entered an order accepting the Magistrate's Report and Recommendation on October 16, 1986. This appeal followed.
 
 
 5
 Shavers, whose employment history has consisted primarily of work as a general clerk typist, worked from 1970 through 1973 as a stenographer for General Motors ("GM"). After working for GM, Shavers was employed by Inner City Business Improvement Forum from 1976 to 1977 as a secretary; a position which, according to her testimony, she left because of her pain. Most recently, Shavers was employed in May of 1983 until February, 1984, by Kelly Services as a temporary secretary working on an assignment basis.
 
 
 6
 Shavers testified before the ALJ that she suffered her first injury to her back in an automobile accident in 1970. In 1973, while employed by GM, Shavers again hurt her back in an attempt to catch a falling file drawer.
 
 
 7
 Shavers was admitted to Mt. Carmel Mercy Hospital on September 30, 1977, complaining of low back pain and spasms. The admitting diagnoses were chronic lumbosacral strain and possible radiculopathy. X-rays revealed a normal spine with no fracture, dislocation or degeneration. Straight leg raising was essentially negative at ninety degrees; however, Shavers complained of low back pain during Ganslen's test. Shavers exhibited no reflex, sensory or motor deficits in her lower extremities.
 
 
 8
 Shavers was treated for her pain and spasms from 1977 forward under the care of Dr. Bout, her family physician, and Dr. Pornetta, her orthopedic surgeon. In 1980, she was hospitalized at Providence Hospital, when she complained of low back pain over the preceeding one and one-half weeks. Although there was pain on straight leg raising, there were no neurological or motor deficites noted, and an X-ray revealed a normal lumbosacral spine.
 
 
 9
 Dr. Pornetta, who treated Shavers from the time of the accident at GM in 1973 through 1984, was contacted in May and June of 1984 and was asked to describe Shaver's condition and his care of her. His diagnosis was chronic strain, marked by persistent neck and constant lower back pain since 1973 with acute exacerbation in spite of conservative treatment, and radiation into the posterior left thigh. Dr. Pornetta noted that the range of motion of the lumbar spinal area was limited to 0-45 degrees; however, there were no sensory, motor or reflex nerve root abnormalities noted. When asked to report dates and results of any nerve root irritation tests, Dr. Poretta noted that a 1974 EMG and 1974 mylogram were normal; however, he also noted that straight leg raising was limited on both legs. When contacted in June of 1984, he noted that a 1984 CT scan was normal.
 
 
 10
 After the date of expiration of her insured status, June 30, 1980, Shavers was hospitalized on three additional occasions with back spasms and pain. On one occasion, straight leg raising produced pain at thirty-five degrees bilaterally. Shavers was treated with physical therapy and dismissed. In May of 1984, an increasing lumbar lordosis, as well as some limitation of lumbar spine motion and limited straight leg raising, was noted by Dr. Bout.
 
 
 11
 At the administrative hearing, Shavers testified as to her pain, spasms, and weakness in her left leg. She stated that she uses analgesics, a special mattress, a whirlpool device, heat pads, a special corset, and that she attends physical therapy.
 
 
 12
 The medical advisor at the hearing was Dr. Richard Hall. He identified Shavers' impairments as lumbrosacral strain, cervical strain, a past drug dependency, and a depression, which he noted was not confirmed by any medical evidence. He concluded that Shavers' condition was not a listed impairment, 20 C.F.R. Part 404, Subpart P, Appendix 1, and that she should be able to perform sedentary work.
 
 
 13
 Dr. Irwin Schultz, a vocational expert, testified that Shavers could return to a portion of her past work if found to be capable of performing sedentry work, and that she could return to all of her past work if found capable of performing light work.
 
 
 14
 The ALJ and the Secretary found that Shavers was not disabled because her impairments did not deprive her of the residual functional capacity to return to her past work. The district court found substantial evidence to support the Secretary's decision. We agree.
 
 
 15
 The standard of review of a decision of the Secretary is whether or not the decision is supported by substantial evidence. E.g., Kirk v. Secretary of Health and Human Services, 667 F.2d 524, 535 (6th Cir.1981), cert. denied, 461 U.S. 957, 103 S.Ct. 2428, 77 L.Ed.2d 1315 (1983). Substantial evidence means more than a mere scintilla; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. E.g., Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 851 (6th Cir.1986). In determining whether substantial evidence exists, we review the evidence in the record taken as a whole. 801 F.2d at 852.
 
 
 16
 Initially, Shavers argues that the Secretary erred in limiting his consideration of the evidence to that preceding June 30, 1980, the last date of insured status. However, we do not reach that issue, for we conclude that even if post-June 30, 1980 evidence is considered, the decision of the Secretary is supported by substantial evidence.
 
 
 17
 It is well settled that pain alone may be so severe that it constitutes a disability. E.g., Kirk, 667 F.2d at 538 (6th Cir.1981). However, subjective complaints of pain alone cannot themselves establish the existence of a disability. Rather, objective medical evidence which confirms the existence of the pain is required. Duncan, 801 F.2d at 852-853.
 
 
 18
 The requirement that objective medical evidence exist is defined by statute for determinations made prior to January 1, 1987:
 
 
 19
 An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically accepted clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical; physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all the evidence required to be furnished under this paragraph (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is under a disability. Objective medical evidence of pain or other symptoms established by medically acceptable clinical or laboratory techniques (for example, deteriorating nerve or muscle tissue) must be considered in making a conclusion as to whether the individual is under a disability.
 
 
 20
 Social Security Disability Benefits Reform Act of 1984, Pub.L. No. 98-460, Sec. 3(a)(1) (Oct. 9, 1984). In Duncan v. Secretary of Health and Human Services, this Court articulated its formulation of Sec. 3(a)(1) as a two-pronged test which requires (1) objective medical evidence of an underlying medical condition; and (2) objective medical evidence to confirm the severity of the alleged pain arising from that condition, or an objectively determined medical condition of a severity which can reasonably be expected to give rise to the alleged pain. 801 F.2d at 853.
 
 
 21
 The Secretary found that Shavers' "... allegations of debilitation through pain [were] not corroborated by the medical evidence, the testimony of the medical advisor or her own demeanor during the hearing, and that she retained the residual functional capacity to return to her past work." This finding is supported by substantial evidence.
 
 
 22
 Although Shavers has consistently complained of pain dating from the time of her initial injury, the objective medical evidence does not confirm its severity. No doctor has identified any physiological change indicative of the disabling nature of her pain or provided any objective measure of its severity. Moreover, Shavers has not demonstrated the existence of an objectively determined medical condition of a severity which would give rise to the pain of which she complains. X-rays taken of Shavers' spine have been consistently negative; also, with the exception of two straight leg raising tests and one instance of slightly decreased reflex, all neurological examinations have been negative. Indeed, no musculoskelatal abnormalities of any type have been noted.
 
 
 23
 Accordingly, we find that substantial evidence exists to support the decision of the Secretary that Shavers retained the residual functional capacity to return to her past work, and the judgment of the Honorable Robert E. DeMascio, United States District Court, Eastern District of Michigan, is hereby AFFIRMED.[1]
 
 
 
 [1]
 Shavers also argued that the Secretary erred in concluding that her testimony concerning her pain was not credible, particularly because it was supported by her treating physician, citing Harris v. Heckler, 756 F.2d 431, 435 (6th Cir.1985), and that the work she performed for Kelly Services constituted trial work pursuant to 42 U.S.C. Sec. 422(c). We disagree. First, the admonishment in Harris against rejecting claims of pain based solely on demeanor at the hearing only applies when there is uncontroverted evidence in the record which clearly corroborates a claimant's assertions of pain. 756 F.2d at 436. Moreover, ".... although [t]he medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference.... [t]his is true .... only if the treating physician's opinion is based on sufficient medical data." 756 F.2d at 435 (citations omitted)
 As for the trial work exception, because we find that there is substantial evidence for the Secretary's decision even if Shavers' efforts at rehabilitation are taken into account, and because the Secretary did not rely on this work in finding that Shavers was not disabled, we do not reach this issue.