856 F.2d 192
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Robert E. ALEXANDER, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH & HUMAN SERVICES, Defendant-Appellee.
 No. 87-1751.
 United States Court of Appeals, Sixth Circuit.
 Aug. 29, 1988.
 
 Before ENGEL, Chief Circuit Judge, MILBURN, Circuit Judge, and DAVID D. DOWD, Jr., District Judge*.
 PER CURIAM.
 
 
 1
 Claimant Robert E. Alexander appeals the judgment of the district court affirming the Secretary's denial of social security disability benefits. For the reasons that follow, we affirm.
 
 
 2
 Claimant filed an application for disability insurance benefits on September 4, 1984, alleging that he became disabled on July 9, 1984, due to a heart attack. Claimant had been employed as a bricklayer for approximately thirty years. From 1956 through 1981, he was self-employed, and the nature of his work was heavy to very heavy. During the course of his employment, claimant lifted as much as 200 pounds at a time. He was frequently required to lift as much as fifty pounds.
 
 
 3
 On June 19, 1981, claimant suffered an acute myocardial infarction. His treating physician, Dr. David Schwartz, stated that claimant was discharged from the hospital on July 2, 1981, "feeling improved." He was directed to return to Dr. Schwartz for follow-up care. J.A. at 107-08.
 
 
 4
 Claimant returned to work in June 1982. He modified his job duties so that the work became of a light exertional nature. He was required to lift only five pounds at a time, usually one brick and one tool. Claimant worked in this capacity as a bricklayer for Donald Deplow and Sons Masonry until July 1984, when he suffered a second heart attack.
 
 
 5
 Claimant was admitted to Bi-County Hospital on July 11, 1984, complaining of chest pain. On admission, Dr. Schnitzer believed that claimant had suffered an acute infarction of the anteroseptal wall, and thus claimant was placed in the coronary care unit for monitoring. Dr. Schnitzer observed that claimant's "complaints of pain seem to be somewhat out of proportion to his degree of distress at the time of the initial evaluation." J.A. at 160.
 
 
 6
 Claimant continued to suffer chest pain despite the attempted control by medication. He was discharged from Bi-County Hospital on July 18, 1984, with a final diagnosis of acute anteroseptal wall myocardial infarction, bronchial asthma per history, and previous inferior wall myocardial infarction. Claimant was transferred to Detroit Osteopathic Hospital on July 18, 1984, and on July 20, 1984, claimant underwent a left-heart catheterization that was performed and completed without complication.
 
 
 7
 On August 8, 1984, claimant underwent double bypass surgery at St. Luke Hospital in Milwaukee, Wisconsin. He was discharged on August 15, 1984, and Dr. Richard Shore indicated that claimant tolerated the procedure well. Claimant's postoperative progress was unremarkable, and his recovery was described as "excellent." J.A. at 222.
 
 
 8
 On September 6, 1984, claimant underwent a treadmill exercise tolerance test. He achieved a level of five METS, which a medical advisor assigned to this case by the Secretary has indicated is consistent with the ability to perform light work. Claimant's heart rate and blood pressure responses during the treadmill test were normal.
 
 
 9
 On September 19, 1984, Dr. Komasara indicated that claimant suffers chest pain on exertion. He stated that the pains were relieved by rest and/or nitroglycerin. Also on September 19, 1984, claimant's treating physician, Dr. Schwartz, indicated that claimant had not suffered chest pains since the bypass surgery.
 
 
 10
 Nevertheless, on October 15, 1984, Dr. Schwartz indicated that he believed "Mr. Alexander is permanently and totally disabled from any gainful employment." J.A. at 262. In a summary dated March 19, 1985, Dr. Schwartz again stated that "the patient is a candidate for total and permanent disability." J.A. at 269. He stated that claimant's ejection fraction continued to demonstrate impairment of the left ventricular function. Moreover, he noted that claimant continued to suffer shortness of breath, possibly related to asthma. Id.
 
 
 11
 At the hearing, claimant testified that he suffers from exhaustion and shortness of breath. He stated that he had stopped performing the activities and exercises that he was directed to perform through the course of therapy because he believed "they weren't doing [him] any good." J.A. at 39. He stated that he rests at least twice a day, in the morning and afternoon, usually for an hour to an hour and one half at a time. He suffers from a "tingling sensation" in his legs at night, and this condition makes it difficult for him to sleep.
 
 
 12
 During the average day, claimant will sometimes make a bed and load the dishwasher. He watches television and occasionally does some light grocery shopping or driving for a short distance. He socializes with family members, going to visit his mother or mother-in-law on a regular basis. He has a standing date with his brother-in-law every week.
 
 
 13
 Claimant stated that he suffers constant shortness of breath. However, he indicated that it is somewhat alleviated by the use of Ventalin, which he uses approximately nine times a day. Claimant stated that he has not used nitroglycerin in over a year. Although he stated that his shortness of breath is so severe that it sometimes causes him to be unable to talk, he admitted that this has occurred on only two occasions.
 
 
 14
 Dr. Franklin Hull, a board-certified cardiologist, testified as a medical advisor in the case. Dr. Hull testified that although claimant has had two previous heart attacks, he has undergone bypass surgery to correct this condition. Postoperatively, claimant has suffered neither angina nor heart failure. Claimant does, however, continue to have symptoms from asthma. Dr. Hull speculated that a significant part of claimant's fatigue was due to deconditioning which occurred after he stopped participating in rehabilitation exercises. He indicated that claimant's performance on the treadmill test was consistent with the ability to perform light work. Two residual functional capacity assessments in the record support this conclusion as well.
 
 
 15
 A vocational expert testified that if claimant's complaints were found to be credible, claimant would be unable to work. However, she indicated that if the medical advisor's testimony were accepted, it would support the conclusion that claimant could perform his prior work as a bricklayer, which was of a light exertional nature.
 
 
 16
 On July 16, 1986, the Administrative Law Judge issued an opinion finding claimant not disabled. The ALJ concluded, on the basis of the medical record and the testimony of the medical advisor and the medical expert, that claimant retained the capacity to perform his prior work as a bricklayer. Review of this decision was denied by the Appeals Council.
 
 
 17
 Claimant subsequently sought review in the district court, and the case was referred to a magistrate. On April 28, 1987, the magistrate recommended that the decision of the Secretary be affirmed. The magistrate's report and recommendation was adopted by the district court on June 16, 1987. In this appeal, claimant contends that the decision of the Secretary is not supported by substantial evidence. Claimant further contends that, at the very least, he is entitled to a remand to the Secretary for consideration of additional medical evidence.
 
 II.
 A.
 
 18
 "The standard of review of a decision of the Secretary is whether or not the decision is supported by substantial evidence." Shavers v. Secretary of Health & Human Services, 839 F.2d 232, 234 (6th Cir.1987) (per curiam). Substantial evidence is, of course, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also Duncan v. Secretary of Health & Human Services, 801 F.2d 847, 851 (6th Cir.1986). Substantial evidence must be based upon the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner v. Heckler, 745 F.2d 383, 388 (6th Cir.1984). On the state of any record, it is entirely possible for two different conclusions to be supported by substantial evidence. Crisp v. Secretary of Health & Human Services, 790 F.2d 450, 453 n. 4 (6th Cir.1986) (per curiam).
 
 
 19
 In order to establish a prima facie case of disability, the claimant must show that he is unable to perform his past relevant work. See, e.g., Kirk v. Secretary of Health & Human Services, 667 F.2d 524, 529 (6th Cir.1981), cert. denied, 461 U.S. 957 (1983). Only after the claimant has established a prima facie case does the burden shift to the Secretary to establish the existence of jobs that claimant is able to perform. Id. If the determination of disability can be made at any point in the sequential evaluation, further inquiry is not required. Salmi v. Secretary of Health & Human Services, 774 F.2d 685, 689 (6th Cir.1985).
 
 
 20
 The medical opinions of treating physicians are entitled to "substantial deference" in the disability determination. See, e.g., King v. Heckler, 742 F.2d 968, 973 (6th Cir.1984); Lashley v. Secretary of Health & Human Services, 708 F.2d 1048, 1054 (6th Cir.1983); Kirk, 667 F.2d at 536. However, the ultimate determination of disability is the prerogative of the Secretary, not the treating physician. Garner, 745 F.2d at 391 (6th Cir.1984); Houston v. Secretary of Health & Human Services, 736 F.2d 365, 367 (6th Cir.1984). The treating physician's opinion may be discredited when other reliable evidence brings its validity into question. See Giddings v. Richardson, 480 F.2d 652 (6th Cir.1973).
 
 
 21
 We conclude that, on the basis of this record, there is substantial evidence to support a finding that claimant is not disabled. Dr. Shore reported that claimant's recovery from his bypass surgery was "excellent." Claimant completed a stress test to 5.1 METS, a level consistent with the ability to perform light work. Even Dr. Schwartz, the treating physician, has stated that claimant has not suffered chest pain following the surgery. No mention of fatigue has been made in the reports of the treating physician.
 
 
 22
 Moreover, there is an observation in claimant's hospitalization records that he appears to exaggerate his complaints of pain. At the hearing, claimant appeared to exaggerate his asthmatic condition, stating that "[t]here are times" when his shortness of breath is so severe that he has "difficulty even talking." J.A. at 32. After further questioning from the ALJ, he admitted that this occurred only twice.
 
 
 23
 Dr. Schwartz has stated that claimant appears to be a good candidate for disability. However, this observation is inconsistent with his statement that claimant has not suffered chest pain since the bypass surgery. Although Dr. Schwartz indicated that claimant suffers an abnormal ejection fraction, this impairment has been described by Dr. Hull as "mild to moderate." J.A. at 54. Claimant's own description of his daily activities further supports the conclusion that he is able to engage in work of a light exertional level. Accordingly, we conclude that substantial evidence in the record taken as a whole supports the Secretary's determination that claimant is capable of performing light work.
 
 B.
 
 24
 Claimant contends that he is entitled to a remand for consideration of additional medical evidence. These records include reports from a hospitalization during January 1987 and a letter from Dr. Komasara dated May 22, 1987. The letter from Dr. Komasara indicates that "patient is not able to continue his normal occupation and should be put on disability due to his severe cardiac disease." The hospitalization records indicate that claimant continues to suffer from chest pain.
 
 
 25
 Pursuant to 42 U.S.C. Sec. 405(g), a remand for consideration of new evidence is appropriate when the evidence is material and good cause exists for the failure to incorporate the evidence into the record. Although claimant contends that good cause has been established because the records from the January 1987 hospitalization could not have been incorporated into the record before the Secretary, the fact remains that section 405(g) states that the claimant must establish good cause for failing to produce the evidence "in a prior proceeding."
 
 
 26
 In the present case, the additional evidence was available when claimant's request for review was pending before the district court. Because claimant has not provided any basis for failing to incorporate the new evidence while the case was pending in the district court, we conclude that he has failed to establish good cause for a remand. Accordingly, we decline to consider whether the reports present new and material evidence of disability.
 
 III.
 
 27
 For the foregoing reasons, the judgment of the district court affirming the Secretary's determination that claimant is not disabled is AFFIRMED.
 
 
 
 *
 Honorable David D. Dowd, Jr., Judge, United States District Court for the Northern District of Ohio, sitting by designation