907 F.2d 151
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Betty J. SHARP, Plaintiff-Appellant,
v.
Louis W. SULLIVAN, M.D., Secretary of Health and Human
Services, Defendant-Appellee.
 No. 89-1982.
 United States Court of Appeals, Sixth Circuit.
 July 6, 1990.
 
 Before WELLFORD and BOGGS, Circuit Judges, and DAVID D. DOWD, Jr., District Judge.*
 PER CURIAM.
 
 
 1
 Plaintiff Betty J. Sharp ("Sharp") appeals the decision of the United States District Court for the Eastern District of Michigan, Southern Division, affirming the decision of the Secretary of Health and Human Services ("Secretary") to deny Sharp's application for disability and disability insurance benefits. For the reasons that follow, we affirm.
 
 I.
 
 2
 On July 27, 1987, Sharp filed an application for disability benefits pursuant to Title II of the Social Security Act, as amended, claiming disability commencing February 2, 1980 because of tendonitis in both hands.[1] Her application was denied initially and upon reconsideration. Sharp filed a timely request for a hearing before an Administrative Law Judge ("ALJ"), which was held on April 13, 1988. The ALJ conducted a de novo review and on July 12, 1988 issued a decision denying Sharp disability benefits. The basis of the ALJ's decision was his determination that Sharp did not have any impairment or combination of impairments severe enough to limit her ability to perform her past relevant unskilled sedentary work as a factory worker. The ALJ's decision became the decision of the Secretary when the Appeals Council denied Sharp's request for review by letter dated November 23, 1988.
 
 
 3
 Sharp sought review of the Secretary's decision pursuant to 42 U.S.C. Sec. 405(g) in the United States District Court for the Eastern District of Michigan. The parties' cross motions for summary judgment were referred to Magistrate Komives who issued a Report and Recommendation recommending that the Secretary's motion for summary judgment be granted. Over Sharp's objection to Magistrate Komives's Report and Recommendation, the district court accepted the Magistrate's Report and Recommendation granting the Secretary's motion for summary judgment and denying plaintiff's motion for summary judgment. Sharp appeals from that Order.
 
 II.
 
 4
 Sharp was born on December 16, 1944 and has a ninth grade education. She was 43 years old at the time of the hearing before the ALJ. Sharp worked as an assembler for the Ford Motor Co. ("Ford") for seven years until February, 1980 at which time she left Ford because her job position was changed and she could not perform the new job. Initially, Ford placed Sharp on medical layoff and in June, 1980, she was transferred to ordinary layoff. The ALJ characterized her work at Ford as unskilled and sedentary. For a brief three month period in 1981-82, Sharp worked as a cafeteria cook. The ALJ characterized this work as light and unskilled. Sharp has not been employed since 1982.
 
 
 5
 Sharp testified before the ALJ that she is unable to work because of pain and stiffness in both hands. Due to her inability to use adequately her hands, Sharp no longer bowls or engages in crafts and must drive with an extra large steering wheel. Additionally, she sometimes needs assistance in dialing the telephone and buttoning her clothing. Sharp also related that she does in fact cook, wash dishes, make beds, launder clothes, water the lawn, socialize with family and friends, go out to eat, and go camping about twice a year.
 
 
 6
 Plaintiff's primary physician, Dr. Clarence Tsai, M.D., began to treat Sharp in 1980 for pain in both hands. In a report completed in 1987, Dr. Tsai diagnosed Sharp as suffering from "chronic bilateral hand pain--myofascial syndrome" which is an inflammation of the tissue that links muscles and tendons to the bones in the forearm and hands. Dr. Tsai noted that Sharp possessed normal range of motion for both wrists and that there were no neurological deficits. However, Dr. Tsai detected a loss of grip strength in both hands and a loss of fine and gross dexterity. He noted that Sharp was unable to perform various activities such as opening a jar, writing legibly, and picking up small objects.
 
 
 7
 Dr. Robert Larsen, M.D., examined Sharp on August 3, 1983. Dr. Larsen found that Sharp's shoulders and elbows were capable of a full range of motion and that she had good functional range of motion for both her wrists. He noted no tenderness, swelling or inflammation. X-rays performed by Dr. Larsen reflected no bone or joint abnormality. Nerve conduction studies were ordered by Dr. Larsen and performed on August 17, 1983. According to the electromyographic report ("EMG"), there was no evidence of carpal tunnel syndrome or other median neuropathy. Finally, Dr. Larsen found significant weakness in grip strength, but noted a considerable variance in the results of the test to determine grip strength and observed that accurate test results depend upon an individual's willingness to exert maximum effort. Ultimately, Dr. Larsen found no physical reason for Sharp's complaints that her hands would not function as she wished.
 
 
 8
 Dr. Roger M. Morrell, M.D., Ph.D., examined Sharp on August 27, 1983. Dr. Morrell found that Sharp had a significant lack of grip strength in both hands, but found no other motor weakness, atrophy, or sensory loss in either of plaintiff's hands. Dr. Morrell's impression was that Sharp had a myofacial syndrome of the volar compartment of both forearms, which is an inflammation of the tissue that links muscles and tendons to the bones in the forearm and hands. He was unable to opine on the possibility of carpal tunnel syndrome in the absence of the EMG test results ordered by Dr. Larsen. Dr. Morrell found that Sharp's prognosis was poor, especially if her situation was not correctable by surgery, and concluded that she was disabled from returning to her previous employment.
 
 
 9
 Dr. McGauley examined Sharp on September 22, 1983 and on November 3, 1983. His initial diagnosis was bilateral carpal tunnel syndrome, and he ordered a second EMG to be performed. Dr. Shapiro performed the EMG on October 7, 1983. Dr. Shapiro reported to Dr. McGauley that Sharp's EMG test results were within normal limits except for evidence of a previous injury to the spinal nerve root. He did not suggest that the prior injury might account for Sharp's complaints of pain. After receiving Dr. Shapiro's report, Dr. McGauley reexamined Sharp and noted that her claims of pain occurred in the area from her elbows to her hands. He found that Tinel's sign, a test to determine whether Sharp was suffering from a damaged nerve, was negative. Based upon the test results and his examination, Dr. McGauley concluded that from a neurological standpoint, he could not assist Sharp.
 
 
 10
 Sharp was examined by Dr. Raymond Noellert, M.D., on February 26, 1986 and May 14, 1986. Dr. Noellert noted that sensation and strength in the hands was adequate although it was his impression that Sharp suffered from chronic bilateral hand pain. Dr. Noellert added that Sharp's slight build contributed to a lack of subcutaneous padding that made her particularly amenable to pain arising from inflammation of the region where muscles and tendons are linked to the bones of the lower arm and hand. Following Sharp's second examination, Dr. Noellert noted that the previous EMGs were normal and did not offer any insights into possible treatment. He concluded that it was doubtful Sharp would ever be able to return to heavy assembly line work.
 
 
 11
 Dr. William Gerler, a vocational expert, testified at the hearing before the ALJ. He classified Sharp's past work at Ford as sedentary and unskilled, and her previous work as a cafeteria cook as light to medium and unskilled. Dr. Gerler testified that if Sharp was capable of performing unskilled, sedentary work that required very little manual dexterity, Sharp would be able to perform 3,500 jobs in the local economy in telephone operation and 8,000 jobs in security type jobs.
 
 
 12
 After consideration of the medical evidence before him and the testimony of Sharp and a vocational expert, the ALJ found that Sharp's previous work experience consisted of light and sedentary unskilled work. With respect to her allegedly disabling condition, he further found that although there was no evidence of atrophy and that her EMG tests were normal, Sharp suffers from chronic bilateral hand pain. The ALJ further found that Sharp did not have any impairment or combination of impairments severe enough to preclude her from performing her past relevant unskilled sedentary work as a factory assembler. Accordingly, the ALJ concluded that Sharp was not disabled because she could still perform her past relevant work.
 
 III.
 
 13
 In determining whether an individual is disabled within the meaning of the Social Security Act, the Secretary has established a five-step sequential evaluation process. 20 C.F.R. Sec. 404.1520(b)-(f) (1989) ("Regulations"). Sharp's application is therefore properly evaluated under that sequential analysis. First, if the claimant is engaged in any substantial gainful activity there will be no finding of disability. Second, if the claimant does not have a severe impairment which significantly limits physical or mental ability to do basic work there will be no finding of disability. Third, if the claimant has an impairment that meets or equals the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, App. 1, a finding of disability will result without further evaluation. Fourth, if the claimant has a severe impairment which does not meet or equal the Listing of Impairments and if a review of the claimant's residual functional capacity indicates that the claimant can perform past relevant work, there will be no finding of disability. Fifth, if the claimant has a severe impairment which does not meet or equal the Listing of Impairments and if a review of the claimant's residual functional capacity indicates that the claimant cannot perform past relevant work, then claimant's residual functional capacity in conjunction with age, education, and past work experience will be evaluated to determine if claimant can perform other work. If it is determined that claimant can perform other work, there will be no finding of disability. If a claimant is found to be disabled or not disabled at any step in the sequential process, the ALJ's review need not proceed further. 20 C.F.R. Secs. 404.1520(a) (1989).
 
 
 14
 The issue presented by Sharp on appeal is whether the Secretary's denial of disability benefits was supported by substantial evidence in the record. Notwithstanding the broad issue presented on appeal, the argument in support presented by Sharp in her appellate brief is very narrow. Sharp argues that when applying the Regulations, the ALJ implicitly made a determination at step two that her impairment was not severe, and that this determination was not supported by substantial evidence. Her argument that the ALJ determined that her impairment was not severe focuses on the ALJ's alleged misapplication of the five-step analysis of the Regulations, discussed supra. According to Sharp, "since the Administrative Law Judge did not consider the last two factors in the sequential evaluation, he apparently made a finding that the Claimant's condition was 'not severe.' " Brief for Appellant, p. 11.
 
 
 15
 Our review of the Secretary's decision is limited to determining whether
 
 
 16
 the Secretary's findings are supported by substantial evidence and whether the Secretary employed the proper legal standards in reaching her conclusion. Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. The scope of our review is limited to an examination of the record only. We do not review the evidence de novo, make credibility determinations nor weigh the evidence.
 
 
 17
 Brainard v. Secretary of Health and Human Services, 889 F.2d 679, 681 (6th Cir.1989) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971); Consolidated Edison Co v. NLRB, 305 U.S. 197, 229 (1938); Reynolds v. Secretary of Health and Human Services, 707 F.2d 927 (6th Cir.1983)).
 
 
 18
 In his decision denying Sharp's application for disability benefits, the ALJ correctly recited the Regulations' sequential analysis for determining entitlement to disability insurance benefits. After considering the medical evidence presented as well as the testimony of Sharp and a vocational expert, the ALJ determined that plaintiff could perform her past relevant sedentary work as a factory worker. Notwithstanding this conclusion, the ALJ went on to add that even if she could not perform her past relevant work, there was other unskilled work that plaintiff could perform in light of her residual functional capacity, age, education and past work experience. Transcript ("Tr."), pp. 13 and 14. The ALJ also concluded that Sharp's subjective complaints of pain were not supported by objective clinical findings. Tr., p. 13.
 
 
 19
 Therefore, contrary to Sharp's argument on appeal, this panel finds that the ALJ clearly did address steps four and five in the analysis defined by the Regulations for determining disability. Although the ALJ did not make an explicit determination that plaintiff's impairment was severe, the panel observes that absent such a finding, explicit or implicit, the ALJ would necessarily have determined that Sharp was not disabled at that juncture. Such a determination would have eliminated the need for assessment of residual functional capacity to perform past relevant work or other unskilled work.[2] Indeed, after acknowledging that his analysis was controlled by 20 C.F.R. 404.1520(b)-(f), the ALJ observed that "[i]f it is determined that a claimant is or is not disabled at any point in the review, further review is not necessary." Tr., p. 9 (emphasis in original). This observation is consistent with the limitation imposed by 20 C.F.R. 404.1520(a). Accordingly, plaintiff's argument that the Secretary determined her impairment was not severe is not supported by the record.
 
 
 20
 Notwithstanding the narrow argument presented by plaintiff on appeal, this panel will go on to consider whether the Secretary's ultimate decision to deny disability benefits at the fourth step in the Regulations' five-step process was supported by substantial evidence. A determination of disability can result directly from an impairment itself or from pain which arises from an impairment. The panel will therefore examine, in seriatim, whether the Secretary's denial of disability benefits on the basis of a disabling impairment or disabling pain resulting from an impairment was supported by substantial evidence.
 
 
 21
 Conflicting evidence from the medical experts was presented concerning Sharp's claim that she is disabled because she is unable to use adequately both of her hands. Generally, the opinion of a treating physician is entitled to greater weight than are the reports of physicians who have been employed by the government for the purpose of defending against a claim for disability or who have examined the claimant only once. Kirk v. Secretary of Health and Human Services, 667 F.2d 524, 536 (6th Cir.1981), cert. denied, 461 U.S. 957 (1983); Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1054 (6th Cir.1983). While a treating physician's report may be entitled to greater deference, when the record contains inconsistent or conflicting medical opinions it is the Secretary's responsibility to weigh these opinions. Floyd v. Finch, 441 F.2d 73, 76 (6th Cir.1971).
 
 
 22
 In the instant case, there are differing medical opinions on the issue of plaintiff's ability to work. It is within the purview of the ALJ to weigh those conflicting opinions. The range of motion tests performed on plaintiff's fingers, hands, arms, and shoulders were all normal or nearly normal. The EMGs performed on plaintiff were normal as were the tests for nerve damage and motor, sensory and reflex deficits. X-rays of both hands and wrists were normal. While one examining physician arrived at a preliminary diagnosis of carpal tunnel syndrome, the testing performed apparently failed to support that preliminary diagnosis. There has been no final medical diagnosis of carpal tunnel syndrome by any doctor. While plaintiff demonstrated some loss of grip strength and dexterity, she nonetheless retains the ability to engage in a wide range of activities. This panel concludes that there is more than a scintilla of evidence which a reasonable mind could find as adequate to support the Secretary's decision that, while plaintiff has a severe impairment, she nevertheless retains the residual functional capacity to perform her past relevant work or other light or sedentary work. Accordingly, we conclude that the Secretary's decision to deny disability benefits was supported by substantial evidence in the record.
 
 
 23
 Additionally, while it is "well settled that pain alone may be so severe that it constitutes a disability[,] ... subjective complaints of pain alone cannot themselves establish the existence of a disability. Rather, objective medical evidence which confirms the existence of the pain is required." Shavers v. Secretary of Health & Human Services, 839 F.2d 232, 234-35 (6th Cir.1987) (citations omitted). The Sixth Circuit has fashioned a two-pronged test for establishing disability based upon pain alone. First, the claimant must establish objective evidence of an underlying medical condition. Second, the claimant must establish objective medical evidence from which the severity of the alleged pain can reasonably be expected to arise. Id. at 235 (citing Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir.1986)). Further, even though a medical impairment may give rise to pain, whether or not that pain is disabling as alleged by the claimant is a proper credibility call on the part of the ALJ. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir.1984).
 
 
 24
 In the instant case, the Secretary concedes that Sharp has an underlying medical condition, thus satisfying the first prong of the Duncan test for disabling pain. However, there is virtually no objective medical evidence in the record to support the severity of pain alleged by Sharp arising from that condition. As discussed supra, the EMGs, X-rays and range of motion tests performed on plaintiff's fingers, hands, arms, and shoulders were all normal or nearly normal. While Sharp demonstrated some loss of grip strength and dexterity, she nonetheless retains the ability to engage in a wide range of activities. Although there is conflicting medical evidence in the record as to why plaintiff allegedly experiences pain in her hands, this panel concludes that there is substantial evidence in the record to support the Secretary's decision that plaintiff does not suffer from disabling pain.
 
 
 25
 The decision of the district court is AFFIRMED.
 
 
 
 *
 The Honorable David D. Dowd, Jr., United States District Judge for the Northern District of Ohio, sitting by designation
 
 
 [1]
 Tendonitis is the inflammation of the "fibrous cord or band" which connects a muscle to a bone or other structure. Stedman's Medical Dictionary, Fifth Unabridged Lawyer's Edition, (1982)
 
 
 [2]
 Sharp concedes that her impairment does not match or equal the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, App. 1, referred to in step three of the five-part analysis of 20 C.F.R. Sec. 404.1520