Janet C. PALMER, Plaintiff,

v.

Louis W. SULLIVAN, Secretary of Health and Human Services, Defendant.

No. 1:89CV2013.

United States District Court, N.D. Ohio, E.D.

July 23, 1991.

---

Paula R. Goodwin, Cleveland, Ohio, for plaintiff.

Lynn H. Buck, Asst. U.S. Atty., Cleveland, Ohio, for defendant.

## ORDER

BATTISTI, District Judge.

Before the court is the Magistrate's report and recommended decision, plaintiff Janet Palmer's objections and defendant's response thereto. The Magistrate concluded that summary judgment should be granted to defendant Secretary of Health and Human Services (the "Secretary") on the ground that substantial evidence supports the Administrative Law Judge's (the "ALJ") determination that Palmer is not eligible for disability insurance benefits under the Social Security Act (the "Act"). 42 U.S.C. §§ 416(i), 423 (1988). Specifically, the ALJ ruled that Palmer should not receive benefits because she retains the residual functional capacity to perform her past relevant work as a punch press operator.

For the reasons stated herein, the Magistrate's recommended decision is rejected, the Secretary's motion for summary judgment is DENIED, and the case is REMANDED to the Social Security Administration for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Janet Palmer was born on August 5, 1945. Transcript of Administrative Proceedings (hereinafter referred to as the

"Transcript") at 36. She is married with a five year old adopted daughter, Transcript at 37–38, and has an eighth grade education. Transcript at 41. Her past relevant work includes experience as a school bus driver, a machine operator, a cleaning person, and most recently as a punch press operator for seven years. Transcript at 116. Palmer last worked on August 16, 1983 at which time she injured her back lifting a bucket of parts weighing 64 pounds. Transcript at 44–48.

Palmer's daily activities include some cooking, light housekeeping (she does no vacuuming or sweeping, dusts only what she can reach, and pulls the comforter over the beds), occasional grocery shopping with her husband, attending church services when able, driving on rare occasions, taking care of her daughter, and taking short walks in her yard or "from doors to windows". Transcript at 54–59. Additionally, she maintains that she cannot walk, sit, stand or maintain any position for a prolonged period of time. Transcript at 63–64, 112.

On June 5, 1987, Janet Palmer filed an application for disability insurance benefits, alleging that she became unable to work due to disabling pain caused by her August 16, 1983 back injury. The Social Security Administration (the "SSA") denied her application initially and upon reconsideration. Transcript at 95–96, 101–02.

On March 17, 1988, Palmer appeared with counsel at a hearing before the Administrative Law Judge (the "ALJ"). Transcript at 27–31. The ALJ remanded the case to the Ohio Bureau of Disability Determination to consider the presence of a possible mental disorder. Transcript at 30–31, 165–69. Her subsequent claim was again denied. Transcript at 175–76.

A second hearing was held before the ALJ on January 5, 1989, at which time the ALJ made the following findings of fact:

1. The claimant met the disability insured status requirements of the Act on August 16, 1983, the date the claimant stated she became unable to work, and continues to meet them through March 31, 1989.

2. The claimant has not engaged in substantial gainful activity since August 16, 1983.

3. The medical evidence establishes that the claimant has severe impairments in combination (20 CFR 404.1523) of: a differentiated somatoform disorder and somatoform pain disorder, status post low back injury without disc herniation, but that she does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.

4. The claimant's subjective allegations of disabling pain and limitation of function are not credible, and are not supported by the substantial weight of the objective medical and clinical findings of record. The claimant does not have pain, symptoms or physical or mental limitations of a level of severity that would preclude her from performing her vocationally relevant past work, as she describes this job.

5. The claimant has the residual functional capacity to perform work-related activities except for work involving more than working in reduced stress environments, performing tasks of no greater than average complexity (20 CFR 404.1545).

6. The claimant's past relevant work as a punch press operator did not require the performance of work-related activities precluded by the above limitation(s) (20 CFR 404.1565).

7. The claimant's impairments do not prevent the claimant from performing her past relevant work.

8. The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 CFR 404.-1520(e)).

The Appeals Council rejected Palmer's request for review, making the ALJ's decision the final decision of the Secretary. Transcript at 3–4. *See Abbott v. Sullivan,* 905 F.2d 918, 923 (6th Cir.1990) (citing *Mul-*

*len v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (en banc)).

Palmer subsequently filed for review in this court pursuant to 42 U.S.C. § 405(g). The case was referred to a magistrate who recommends affirmance of the Secretary's decision. Palmer has filed objections to this recommendation, to which defendant has responded.

## II. STANDARD OF REVIEW

In order to receive disability insurance benefits under the Social Security Act, the claimant bears the burden of proving that she is "under a disability". 42 U.S.C. § 423(a)(1). Disability is defined as the "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

■ The claimant establishes a prima facie case if she shows she has a disability which precludes her from performing her past relevant work. 42 U.S.C. § 423(d)(3). Once a prima facie case is established, the burden shifts to the Secretary to show that the claimant is capable of performing other substantial gainful activity, and that such employment opportunities exist in significant numbers in the national economy. *Young v. Califano*, 633 F.2d 469, 470 (6th Cir.1980). The claimant's capacity to work must be evaluated in light of her age, her education, her experience, and her impairment, including her pain. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir.1978).

The Secretary's decision must be based upon proper legal standards, *Gaffney v. Bowen*, 825 F.2d 98 (6th Cir.1987), and it must be supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Abbott v. Sullivan*, 905 F.2d 918, 922–23 (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)). While the function of the reviewing court is not to try factual issues de novo, *Lane v.*

*Gardner*, 374 F.2d 612, 616 (6th Cir.1967), the court nevertheless has the obligation to examine the record "as a whole" and not disregard relevant evidence. *Hephner*, 574 F.2d at 361–62.

## III. ANALYSIS

■ The critical issue in this case is whether the pain caused by Palmer's impairment is sufficiently severe to prevent her from performing her prior work as a punch press operator—a job which requires her to sit for eight hours some days, to stand for eight hours other days, and to lift up to 65 pounds on a frequent basis.

In *Garner v. Heckler*, 745 F.2d 383 (1984), the United States Court of Appeals for the Sixth Circuit summarized the appropriate disability analysis as follows:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2.

2. Does the claimant have any medically determinable physical or mental impairment(s)? If no, the claimant is not disabled. If yes, proceed to Step 3.

3. Does the claimant have any severe impairment(s)—i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If no, claimant is not disabled. If yes, proceed to Step 4.

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If no, the claimant is not disabled. If yes, proceed to Step 5.

5. Does the claimant have any impairment or combination of impairments meeting or equalling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6.

6. Can the claimant, despite his impairment(s), considering his residual

384

functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant is not disabled. If no, proceed to Step 7.

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education and past work experience, do other work—i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. If no, the claimant is disabled.

The analysis in the instant case proceeded to Step 6 to determine whether Palmer's impairment precluded her from performing her past relevant work. The ALJ found that Palmer's impairments of somatoform disorder, somatoform pain disorder and status post low back injury caused only a mental, as opposed to physical, impairment—limiting her to low-stress work involving tasks of average, or less than average, complexity. Inasmuch as her prior work as a punch press operator did not exceed the limitations of her residual functional capacity, the Secretary determined that Palmer was "not disabled" for purposes of recovering disability insurance benefits.

While the above assessment addressed the mental aspect of Palmer's somatoform disorder, it did not properly evaluate the physical effect of her pain on her ability to engage in substantial gainful activity. *Pagelow v. Flemming*, 189 F.Supp. 671 (D.C.N.J.1960).

■ With regard to subjective claims of pain, it is well-settled that pain alone may be so severe that it constitutes a disability. *Shaver v. Secretary of Health & Human Services*, 839 F.2d 232, 234 (6th Cir.1987); *King v. Heckler*, 742 F.2d 968, 975 (6th Cir.1984); *Beavers v. Secretary of Health and Human Services*, 577 F.2d 383, 386 (6th Cir.1978). Initially, there must be "objective medical evidence of an underlying medical condition". *Duncan v. Secretary of Health and Human Services*, 801 F.2d 847, 853 (6th Cir.1986). In addition, there must be either (1) objective medical evidence to confirm the severity of the alleged pain, or (2) an objectively determined medical condition of such severity that it can reasonably be expected to give rise to the alleged pain. *McCormick v. Secretary of Health & Human Services*, 861 F.2d 998, 1003 (6th Cir.1988). Moreover, subjective claims of pain are not limited to claims of pain resulting from physiological impairments, but include symptoms such as back pain resulting from mental impairments. *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir.1989), 20 C.F.R. § 404.1529.

In the instant case, plaintiff's underlying medical condition is a somatoform pain disorder precipitated by a lower back injury. This diagnosis was reached by a clinical evaluation and an objective medical test, the Minnesota Multiphasic Personality Inventory (the "MMPI"), performed by an independent psychologist, Dr. Weinstein. Transcript at 14, 168. This diagnosis was accepted by the Administration's medical expert, Transcript at 16–17, 82, and specifically incorporated as a finding of fact by the ALJ. Transcript at 16, 18. Thus the first prong of the test is met.

Palmer further contends that somatoform disorders can reasonably be expected to give rise to disabling pain, and that her symptoms in particular establish this fact.

■ Section 12.07 of the Listing of Impairments defines somatoform disorder as "(p)hysical symptoms for which there are no demonstrable findings or known physiological mechanisms." The Diagnostic Statistical Manual of Mental Disorders describes somatoform pain disorder as a disease which involves preoccupation with pain for at least 6 months and either "(1) an appropriate evaluation uncovers no organic pathology, or (2) when there is related organic pathology, the complaint of pain ... is grossly in excess of what would be expected from the physical findings." Diagnostic Statistical Manual of Mental Disorders (3rd ed. Revised 1987), at 266–67. Thus, by definition, a somatoform disorder or somatoform pain disorder involves a significant discrepancy between objective medical findings and a claimant's allega-

tions of pain. The ALJ's continual reliance on the absence of organic pathology is, therefore, of questionable validity. Transcript at 15–18. In accepting that the plaintiff has a somatoform disorder that is not disabling per se, 20 C.F.R., the ALJ should have gone on to analyze the extent and effect of plaintiff's pain. In other words, the relevant question is whether the plaintiff suffers from disabling pain.

The ALJ found no disability because (1) Palmer's claims of pain were not credible, (2) Palmer refused to undergo psychiatric treatment for her problem, and (3) the Administration's medical expert described Palmer's residual functional capacity as sufficient to do her past relevant work. The record, however, lacks substantial evidence in support of these determinations.

Although the ALJ found that Palmer suffers from a severe impairment, he found her complaints of pain not credible. Specifically, he noted that "the discrepancy between the claimant's subjective allegations and the objective findings of record [is] striking, and fail[s] to establish entitlement to disability insurance benefits." Transcript at 16. As previously stated, it is the nature of Palmer's illness that she may experience pain grossly in excess of what would be expected from the physical findings. Under the ALJ's reasoning, this discrepancy between subjective pain and physical symptoms would condemn all persons with somatoform disorders to denials of disability benefits.

While the ALJ's findings regarding credibility are not to be lightly discarded, *Beavers v. Secretary of Health and Human Services*, 577 F.2d 383 (6th Cir.1978), substantial evidence in the record shows that Palmer is suffering from severe pain and that her pain precludes her from performing her prior work as a punch press operator.

Palmer was first admitted to Elyria Hospital in August, 1983 with acute lower back pain, possible herniated disc at the L–5 S–1 level and severe myospasms of the lower back. Transcript at 129. Her symptoms included severe restriction in all trunk range of motion, positive straight leg raising, tenderness over the lumbosacral area, and marked paraspinal muscle spasm. Transcript at 129–135. In addition, Palmer was described as "essentially rigid", and she complained of intermittent numbness and sharp pains down the right leg. *Id.* X-rays showed chronic changes of the lumbar spine with minimal degenerative disease and a previous fracture at L–4. Palmer was treated conservatively with pelvic traction and a combination of medications including Flexeril, Valium and Talwin. *Id.* When discharged, one week after her admission, her condition was somewhat improved, although she was still in pain. Transcript at 129.

Palmer returned to the hospital in November, 1983 under the care of Dr. Sertich, an orthopedic surgeon, for the purpose of having a lumbar myelogram taken. Due to the severity of her pain, the plaintiff agreed to take this test at great risk to herself, despite her history of allergic reactions to dyes.[1] Transcript at 130. Although minimal anterior extradural bulging was seen at the L5–S1 disc level, the myelogram was considered essentially normal. Transcript at 140.

Palmer continued to be treated and reevaluated for severe pain despite a lack of significant organic findings. Nevertheless, her symptomatology remained active and marked, and the medical record is consistent with her subjective complaints of pain.

Palmer's condition worsened and she began experiencing falling episodes. She was seen in Elyria Hospital in May, 1985 for a fracture of her left 4th toe—an injury which occurred when she fell following severe pain in her back and right leg. Transcript at 141. In June 1986, Palmer presented herself to the Emergency Room with acute lower back pain and severe muscle spasm accompanied by pain radiating down both legs. Transcript at 148. An X-ray taken at the time showed "minor de-

---

1. In fact, Palmer subsequently spent four days in Elyria Hospital due to a severe reaction to the myelogram which included severe headache and chest pain, and acute back pain with myospasms. Transcript at 136–140.

generative changes involving mainly the apophyseal joints of L4 through S1", again noting her prior fracture. Transcript at 149. In August 1987, Palmer's husband brought her to the emergency room, and she was subsequently admitted to the hospital, because another falling episode left her unable to walk. Transcript at 161. A CT scan showed mild bulges of L3–L4, L4–L5, and L5–S1. She was treated with Demerol and Vistaril which she required every 4–6 hours for pain. Cortisone and Flexeril were also administered. *Id.* Palmer's husband testified that her fall was due to pain she experienced while they were waiting to cross a street. Transcript at 70. He further testified that she is ashamed to go outside because she cannot stand straight, walks in a stooped position, and is constantly in fear of falling. *Id.*

Palmer and her husband testified to a complete change in lifestyle beginning in 1983, particularly since her legs started giving way. Her only outside activity is attending church services, and those she cannot attend regularly. Transcript at 64–65. In fact, she testified that she had to be carried out during one service. *Id.* Her inability to sit, stand or walk for a prolonged period of time and the intensity of her apparent pain were observed and noted by her doctors, Transcript at 16, 129, 143–44, 148, 153, 160, 161, 167, both interviewers from the Social Security Administration, Transcript at 119, 124, and the medical advisor at the hearing. Transcript at 86.

Palmer's records reveal a continuing course of treatment since her 1983 injury which has included medication, physical therapy, TENS unit, back brace, a pain clinic, biofeedback, regular monthly visits with her treating physician, Transcript at 211–18, and the numerous emergency room visits and hospital admissions noted above.

The testimony of the Administration's medical expert regarding the severity of Palmer's pain is striking. When asked what the record reveals about her pain, he stated: "She experiences alot of pain, according to the record and her testimony.... She's had several hospital admissions. She's been to doctors over and over

again about it. Dr. Oania, Dr. Shertage, and Palacar." Transcript at 85. When asked if the medical evidence was consistent with her complaints of pain, the medical expert replied: "Yes, she's been complaining of the pain to medical people.... and they have looked for the cause." *Id.*

The great weight of the evidence thus shows that Palmer suffers severe pain which renders her incapable of sitting, standing or walking for prolonged periods of time. The ALJ buttressed his determination that Palmer's impairment was not disabling with the fact that she did not seek psychiatric treatment. The court in *Blankenship* stated that it is a questionable practice to "chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." 874 F.2d at 1124. Moreover, Dr. Weinstein's report stated that because of her particular impairment, "she has great difficulty accepting the possibility of a psychological factor involved in her perception of pain or in her physical complaints." Transcript at 168. Under the circumstances, failure to seek psychological counselling is not inconsistent with Palmer's illness and should not be used as a reason to discredit the severity of her pain—especially in light of the fact that she has consistently sought medical treatment for her pain.

Finally, in evaluating Palmer's residual functional capacity, the ALJ relied on the assessment of the Administration's medical expert who concluded that Palmer's impairment affected her only nonexertionally, with no physical limitations whatsoever. This reliance is misplaced and contrary to overwhelming evidence in the record.

Dr. Weinstein, an independent psychologist, was charged by plaintiff's attorney with identifying whether the plaintiff was malingering or exaggerating her symptoms. He conducted a clinical interview and administered the MMPI, a standardized psychological test referenced in the Listing of Impairments, Section 12.00(D), which not only provides a personality profile of its subject, but is specifically designed to detect efforts such as malingering. Transcript at 85–86. As a result of the test

scores and his evaluation, Dr. Weinstein concluded that it was highly unlikely that Palmer was malingering or exaggerating her symptoms. Transcript at 165–69. This finding was accepted by the Administration's medical expert. Transcript at 86.

In addition, another expert, the Administration's reviewing psychologist, upon examining the records alone concluded that "[Palmer] is limited by psychogenic pain behavior to activities which are consistent with back impairment (light, non-exertional activities)". Transcript at 203. He further stated that her pain flareups would "limit her ability to complete a normal work week or to perform at a consistent pace." *Id.* Clearly, the reviewing psychologist found definite exertional limitations on Palmer's ability to engage in substantial gainful activity.

When the ALJ questioned the Administration's medical expert about Palmer's residual functional capacity, he never asked him what limitations Palmer's pain placed on her ability to engage in substantial gainful activity—despite the fact that pain is her primary impairment.

Q  "... Doctor, .... based upon reasonable medical certainty, do you have an opinion as to what functional limitation, if any, the claimant suffers because of her physical problems?"

A  "She did not have any established exertional limitations based on the physical findings in the record."

Q  "And Doctor, again, in your opinion, based upon reasonable medical certainty, does she suffer any psychiatric or psychological limitations?

A  "Yes."

Q  "And what would that be?"

A  "She needs reduced stress situations, so as not to intensify her somatic symptoms, and because of her concentration difficulties, she would not be able to handle anything, more than the average complexity."

Q  "Thank you, Doctor. Counselor, you may inquire."

Transcript at 83–84. It was not until the medical expert was questioned by the plaintiff's attorney as to what functional limitations, if any, Palmer's pain presented, that he testified that if Palmer's subjective allegations were credited, they would "mature to no lifting, very little sitting, very little standing, very little walking (and that she would be mostly confined) to the floor with her legs elevated." Transcript at 86.

Because the medical advisor testified that there is ample evidence of pain other than Palmer's testimony, Transcript at 85, that the medical records and course of treatment are consistent with her pain, *Id.*, that she behaved during the hearing in a way consistent with her complaints of pain, Transcript at 86, and that the MMPI failed to demonstrate any efforts to exaggerate or malinger, *Id.*, his assessment that Palmer's pain presents no physical limitations on her ability to engage in substantial gainful activity pays lip service to her impairment, is contrary to his own testimony, and is not supported by substantial evidence in the record.

For the reasons stated above, the court concludes that there is not substantial evidence in the record to support the ALJ's determination of Palmer's residual functional capacity. The evidence is conclusive that Palmer's impairment renders her incapable of maintaining any position for a prolonged period of time. Limited as such, she is incapable of performing her past relevant work as a punch press operator. Accordingly, this case is remanded to the Social Security Administration for additional findings consistent with this opinion.

IT IS SO ORDERED.